## 45051. THE STATE v. SUTTON.
### (369 SE2d 249)

WELTNER, Justice.

Investigating a complaint of shooting deer out of season, a Georgia conservation ranger went to the home of Wallace Sutton and knocked on his front door. There was no answer. When the ranger walked around the side of the house, he saw a deer head hanging in an open area beneath Sutton's back porch. He saw also two headless deer carcasses on the porch. The ranger again knocked on the front door. Sutton came to the door, and the ranger told him that he had seen the deer. Prior to any questioning by the ranger, Sutton said: "Okay, I'm Wallace Sutton and I shot the deer." The ranger arrested Sutton for the game law violations, advised him of his *Miranda* rights, and asked permission to look in Sutton's smokehouse for the second deer head. Sutton replied: "Sure, go ahead and look in it," and offered to help the ranger load the carcasses onto a truck.

The trial court sustained a motion to suppress the evidence relating to the deer carcasses, on the ground that it was the result of an illegal search and seizure, in that the ranger invaded the curtilage of Sutton's dwelling.

1. The state contends that the ranger's investigation into Sutton's sideyard is permissible under OCGA § 27-1-20 (a) (6), authorizing conservation rangers "[t]o go upon property outside of buildings, posted or otherwise, in the performance of their duties." Statutes of this state cannot diminish rights guaranteed by the United States or Georgia Constitutions. The inquiry, therefore, must be to the Fourth and Fifth Amendment principles.

2. The fruits of a search conducted with consent are admissible. *Green v. State*, 242 Ga. 261 (249 SE2d 1) (1978). *McShan v. State*, 150 Ga. App. 232, 233 (257 SE2d 202) (1979). The legality of such a search is not vitiated because, prior to obtaining Sutton's consent (to search the premises for the missing deer head, and to seize the carcasses), the ranger had observed the evidence of the crime. In *Atkins v. State*, 173 Ga. App. 9, 12 (325 SE2d 388) (1984), the court held:

> even the officer's initially unauthorized presence [in the curtilage] does not require suppression of the items discovered, because 'the consent given . . .is not only a consent to future searches and seizures, but it amounts to a waiver of the warrant requirement with respect to the search previously conducted' . . . . [Cits.] A voluntary written consent to search having been executed . . . the prior warrantless entry into the curtilage, if any, was ratified.

See also *Thompson v. State*, 248 Ga. 343 (285 SE2d 685) (1981).[1] Accordingly, the motion to suppress should have been denied.

*Judgment reversed. All the Justices concur, except Smith, Gregory, and Bell, JJ., who dissent.*

SMITH, Justice, dissenting.

After receiving the complaint, Ranger Yeargen asked an investigator from the sheriff's department, Johnny Russell, to assist him. Russell waited by his vehicle as the ranger knocked on the front door, but no one answered. The ranger asked Russell to walk around the house with him to look for the deer. Russell said that he could not do so without a search warrant. The ranger had been taught that he was authorized pursuant to OCGA § 27-1-20 to go on property, posted or otherwise, in the performance of his duties, and that *he* did not need a search warrant. After walking to the back of the house, the ranger saw a deer head hanging under the screened porch. Looking through the screen on the porch, he saw two deer carcasses inside the porch. The ranger returned to Russell and asked him to take some pictures. After the ranger told Russell that he had authority to be on the property, Russell responded, "Well, if you have I will accompany you, but I could not do it on my own." Russell walked to the back of the house and took pictures of the deer head under the porch, the carcasses inside the screened porch, blood droppings under the porch, and the blood splattered blade of appellee's tractor. Russell left after taking the pictures.

Ranger Yeargen needed proof that the deer had been recently killed on the property.[*] He walked approximately twenty-five yards behind the house to a field where he found fresh blood. He determined that the deer had been illegally shot at that spot. After completing his investigation, the ranger knocked on the door one last time, and the appellee came to the door. The uniformed ranger did not identify himself. The ranger told the appellee that he was responding to a complaint about a Wallace Sutton shooting and dress-

---

[1] On June 27, 1988, four days after the initial issuance of our opinion in this case, the United States Supreme Court decided *Murray v. United States*. No. 86-995, and *Carter v. United States*, No. 86-1016, ___U.S.___ (___SC___, ___LE2d___) (1988). There, federal agents made an unlawful search of a warehouse. They then obtained a warrant to search the warehouse *without* revealing to the issuing magistrate that the unlawful search had been made. The trial court's denial of motions to suppress was upheld by the court of appeals. The United States Supreme Court held: "Knowledge that the marijuana was in the warehouse was assuredly acquired at the time of the unlawful entry. But it was also acquired at the time of entry pursuant to the warrant, and if that later acquisition was not the result of the earlier entry there is no reason why the independent source doctrine should not apply. Invoking the exclusionary rule would put the police (and society) not in the *same* position they would have occupied if no violation occurred, but in a *worse* one. See *Nix v. Williams*, 467 U. S., at 443."

[*] Deer season closed two days before the complaint was received.

ing deer. The ranger said he had seen the deer, and he "conducted his investigation." At that point, the appellee said, "Okay, I'm Wallace Sutton and I shot the deer." The ranger advised the appellee of his rights and placed him under arrest.

As they were preparing to leave for the sheriff's department, the ranger asked if he could look in the smokehouse. The smokehouse was a small building approximately twenty-five yards in back of the house. The appellee responded, "Sure, go ahead and look in it." There were no deer in the smokehouse. The appellee was charged with two counts of possession of illegal wildlife OCGA § 27-1-31 and one count of hunting deer out of season OCGA § 27-3-15.

1. The Fourth Amendment of the Constitution of the United States, and Art. I, Sec. I, Par. XIII of the 1983 Georgia Constitution provide: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . ." No state statute can grant *anyone* legal authority to violate either constitution. Neither the ranger, nor sheriff's department investigator Russell had any legal authority to walk into the curtilage of the appellee's home without a warrant to begin the investigation. The fact that the ranger wrongly entered the curtilage was compounded by Russell's illegal entry to photograph the deer in an attempt to build a case against the appellee.

2. The "fruits" of a search conducted with consent are admissible, however, the search of the smokehouse did not contain any "fruits." The ranger asked for permission to search the smokehouse. The appellee gave permission to search the smokehouse. Nothing was found in the smokehouse.

There are at least two major differences in this case and the cases cited by the majority. First, the appellee gave his limited consent to search inside his smokehouse after the ranger had "conducted" his "investigation." The appellee did not give his unlimited consent to a search of the premises.

Second, the trial court did not rule on whether the appellee's consent, to search inside a building twenty-five yards in back of his dwelling, acted as a consent to the earlier illegal search of the curtilage of his dwelling. After hearing all the evidence, the trial judge held that the search into the curtilage was unconstitutional and that the evidence from the illegal search must be suppressed.

The cases relied upon by the majority are not applicable to this case. The Court of Appeals in *Atkins v. State*, 173 Ga. App. 9, 12 (325 SE2d 388) (1984), affirmed the trial court's ruling that certain evidence was admissible after the police had obtained a "written consent to. . .conduct a *complete search of the premises*." (Emphasis supplied.) Id. at p. 12. The person giving consent had orally agreed to the search "immediately before the officer in backyard found the items."

Id. The two Louisiana cases cited by the Court of Appeals in *Atkins,* supra, involved factual situations in which the trial courts denied motions to suppress. The appellate courts found that the records supported the trial court's decisions that the written consents to search "his house and car[,]" *State v. Williams* 353 SE2d 1299, 1303 (La. 1977), and "his trailer[,]" *State v. Cormier,* 438 SE2d 1269, 1274 (La. 1983) were freely and voluntarily made. There is no such lower court ruling in this case.

The trial court's decision on questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous. *White v. State,* 255 Ga. 210, 212 (336 SE2d 777) (1985). The trial court in this case did not consider nor decide whether the limited consent to search the smokehouse, after the ranger and Russell had "conducted [the] investigation," transformed the illegal curtilage search into a legal search. The majority raised the issue of consent for the first time in its opinion. The consent issue was never, argued before the trial court, ruled upon by the trial court, enumerated as an error, briefed nor argued by either party before this court.

The Supreme Court is "a court of review." 1983 Georgia Constitution, Art. VI, Sec. VI, Par. II. Our jurisdiction allows us to correct errors made in the lower courts. We do not have jurisdiction to rule upon issues that have not been decided by the trial court.

We can always affirm a trial court's decision if it is "right for any reason." We are not authorized to reverse a trial court's decision based on an issue that was not ruled upon by the trial court nor enumerated as error merely because a majority of this court decides that it may be "wrong for any reason."

I am authorized to state that Justice Gregory and Justice Bell join in this dissent.

DECIDED JUNE 23, 1988 —
RECONSIDERATION DENIED JULY 13, 1988.

*Roger G. Queen, District Attorney, Angela Arkin Byne, Assistant District Attorney,* for appellant.
*George W. Weaver, Brenda S. Weaver,* for appellee.