A97A2218. QUINTRELL v. THE STATE.
(499 SE2d 117)

BEASLEY, Judge.

Quintrell was arrested and charged with three hunting misdemeanors: hunting over bait, "unlawful enticement of game" (OCGA § 27-3-9); hunting bears out of season (OCGA § 27-3-26); and unlaw-

ful use of bear bait (OCGA § 27-3-27). Only the latter two offenses are misdemeanors of a high and aggravated nature. A jury convicted Quintrell of hunting over bait but acquitted him of the other charges. He enumerates error in the denial of his motion to suppress as evidence a videotape showing Quintrell in possession of a hunting bow and arrows on a hunting stand located nearby, which was above food generally considered to be bear bait. He also enumerates as an abuse of discretion the suspension of his hunting and fishing licenses as a condition of probation.

Farist, a law enforcement official in the Department of Natural Resources (DNR), together with other officers, investigated a report of illegal hunting taking place over bait on certain private property in Towns County. In an area up an old road from the property owner's trout hatchery, Farist found at small clearings and other nearby places man-made tree stands, three of wood and one of metal. At one stand he found grease, scraps of what were apparently beef bones, and a salt lick, all ten to fifteen yards from the stand. No food was near the second stand, but a clearing just past it contained a lot of grease and some fish bones. At the third were beef bones, meat scraps, grease and a salt lick. Near the fourth stand were dead trout, apples, candy mints, and doughnuts. Officer Farist saw what he believed to be bear tracks and trails. He smelled the odor of bear. An arrow feather lay beneath a stand, indicating to Farist that the stands were being used for hunting, not photography.

Farist returned the following day with DNR Ranger Bill Jones and videotaped the stands and several persons in or about the stands, including Quintrell. Quintrell, another person and the property owner were arrested. It is uncontested that the stands were located on private property and that the officers did not have the owner's permission to go upon the property but Quintrell did.

1. The first issue is whether Quintrell was entitled to suppression of the videotapes as evidence because they were made in violation of OCGA § 16-11-62 (2) and/or (3)[1] and thus should have been excluded pursuant to the express sanction of OCGA § 16-11-67.[2] His argument centers on his categorization of the place displayed on the film as a "private place" within the meaning ascribed to that term by OCGA § 16-11-60 (3), i.e.: " 'Private place' means a place where one is

---

[1] "It shall be unlawful for: . . . (2) Any person, through the use of any instrument or apparatus, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view; . . . (3) Any person to go on or about the premises of another or any private place for the purpose of invading the privacy of others by eavesdropping upon their conversations or secretly observing their activities."

[2] "No evidence obtained in a manner which violates any of the provisions of this part shall be admissible in any court of this state except to prove violations of this part."

entitled reasonably to expect to be safe from casual or hostile intrusion or surveillance." Quintrell could not reasonably have expected the evidence of bear hunting, including his presence on the second day, to be safe from surveillance by the conservation rangers.

One reason is that the rangers are given, in addition to the powers vested in any other law enforcement officers within the Department of Natural Resources, the power "[t]o go upon property outside of buildings, posted or otherwise, in the performance of their duties."[3] While it is true that "[s]tatutes of this state cannot diminish rights guaranteed by the United States or Georgia Constitutions,"[4] the federal constitution does not proscribe entry on the type of property entered here without warrant by a law enforcement officer in pursuit of official duties. As held in *Manley v. State of Ga.*,[5] entry on posted private property did not constitute trespass onto a zone of privacy protected by the Fourth Amendment.

For that principle we repeat what was quoted in *Manley*: " '[I]n *Hester v. United States*, 265 U. S. 57, 59 (44 SC 445, 68 LE 898), the United States Supreme Court held that even if the law enforcement agents had trespassed onto privately owned land an illegal search and seizure did not occur, because the special protection accorded by the Fourth Amendment to the people in their "persons, houses, papers, and effects" is not extended to the open fields.' "[6] True, the area at issue here was not open to casual view of a passerby on a public way but rather was secluded in the woods. But as the United States Supreme Court observed in *Oliver v. United States*:[7] "An open field need be neither 'open' nor a 'field' as those terms are used in common speech. For example . . . a thickly wooded area nonetheless may be an open field as that term is used in construing the Fourth Amendment." See *Gravley v. State*, 181 Ga. App. 400, 402 (352 SE2d 589) (1986) (physical precedent only); *Perry v. State*, 204 Ga. App. 643, 645 (2) (419 SE2d 922) (1992).

In discerning the scope of the statutory meaning of "private place," we ascribe the same scope as has been given to the Fourth Amendment protections. We give this interpretation to the statutory term because, were it otherwise, an officer could enter the premises, search, make notes, seize contraband, and testify as to all of this at trial but would not be permitted to memorialize the evidence in place by way of a visual or auditory evidence-recording device as listed in OCGA § 16-11-60 (1). The law seeks the highest evidence from the

---

[3] OCGA §§ 27-1-20 (a) (6); 27-1-2 (22).

[4] *State v. Sutton*, 258 Ga. 382 (1) (369 SE2d 249) (1988).

[5] 217 Ga. App. 556, 557 (2) (458 SE2d 179) (1995).

[6] Id.

[7] 466 U. S. 170, 180, fn. 11 (104 SC 1735, 80 LE2d 214) (1984).

purest sources, not the opposite.[8] Where a scene or events can be captured faithfully as is, the factfinder will have a more objective and accurate rendition than generally can be achieved through recollection by a witness. Nothing in the statute indicates the General Assembly intended otherwise.

The crime for which Quintrell was convicted is a misdemeanor. OCGA §§ 27-3-9; 16-1-10. A warrant to use the videotape camera to depict the evidence of criminal activity, which instrument or apparatus clearly is a "device" within the meaning of OCGA § 16-11-60, would not be obtainable because such a warrant can be issued only for specified serious felonies; not for misdemeanors.[9] But a warrant for use of such a picture-creating device is not needed by a law enforcement officer who, in performing the officer's duties as described in OCGA § 16-11-64 (a), does not invade a "private place" and thereby violate OCGA § 16-11-62. Quintrell does not contend that the tree stands and surrounding ground with telltale signs were within the curtilage of any home.

Quintrell does not pursue any independent analysis on state constitutional issues, so we do not address them.

2. As a special condition of probation, the court suspended Quintrell's hunting and fishing "privileges"[10] during the 12-month probation period.

The court is authorized by OCGA § 17-10-1 (a) (1) to "suspend or probate all or any part of the entire sentence under such rules and regulations as the judge deems proper. . . ." See also OCGA § 17-10-3 (b) (misdemeanor punishment may be subject to probation). OCGA § 42-8-35 provides that the court "shall determine the terms and conditions of probation" and lists a number of non-exclusive conditions which the court "may" impose. "The probation and suspension statutes in Georgia vest broad discretion in trial judges. In the absence of express authority to the contrary, we see no logical reason why any reasonable condition imposed for probation or suspension of a sentence by a trial court should not be approved. Probated and suspended sentences, upon reasonable conditions, have traditionally been used by trial judges in Georgia as effective tools of rehabilitation and serve a useful purpose in appropriate cases as an alternative to confinement."[11] Quintrell's challenged probation condition does not exceed the length of the sentence[12] and clearly serves the rehabilitative purpose of his sentence by making plain that abuse of

---

[8] OCGA § 24-1-2.

[9] OCGA § 16-11-64 (b) (1).

[10] OCGA §§ 27-1-3; 27-2-23.

[11] *State v. Collett*, 232 Ga. 668, 670 (208 SE2d 472) (1974).

[12] See *Ballenger v. State*, 210 Ga. App. 627, 628 (3) (436 SE2d 793) (1993).

the privileges results in their withdrawal, at least this time.[13]

Quintrell argues that the licenses suspension was off limits for his misdemeanor sentence because the legislature provided for such only with respect to the game and fish violations that were designated as high and aggravated misdemeanors, such as hunting bears as prohibited by OCGA § 27-3-26. Subsection (c) of that section mandates suspension of the hunting and fishing privileges of the offender for three years. This does not eliminate the discretionary imposition of suspension for the misdemeanor Quintrell committed. There was no abuse of discretion.

*Judgment affirmed. Senior Appellate Judge Harold R. Banke concurs. McMurray, P. J., concurs specially.*

McMURRAY, Presiding Judge, concurring specially.

I fully concur in Division 2 and in the judgment of affirmance. I also concur in the Fourth Amendment analysis of Division 1, holding that the woods at issue were not a "private place." I write separately to emphasize there is no basis in state law for suppressing the videotape of defendant. Except for certain designated felonies, "nothing in this part [Chapter 11, Article 3, Part 1, OCGA §§ 16-11-60 through 16-11-69,] shall apply to a duly constituted law enforcement officer in the performance of his official duties in ferreting out offenders or suspected offenders of the law or in secretly watching a person suspected of violating the laws of the United States or of this [S]tate, or any subdivision thereof, for the purpose of apprehending such suspected violator." OCGA § 16-11-64 (a). As the majority correctly notes, misdemeanor hunting over bait is not one of those felonies designated by OCGA § 16-11-64 (b) for an investigation warrant.

DECIDED MARCH 17, 1998.

*William L. Reilly*, for appellant.

*Albert F. Taylor, Jr., District Attorney, Mary E. Moore, Assistant District Attorney*, for appellee.

---

[13] See *Allen v. State*, 258 Ga. 424, 425 (3) (369 SE2d 909) (1988); *Mangiapane v. State*, 178 Ga. App. 836 (1) (344 SE2d 756) (1986).