S02A1490. FINCHER v. THE STATE
(578 SE2d 102)

BENHAM, Justice.

Christopher Cornelius Fincher appeals from his conviction for malice murder. The evidence showed that the victim, Fincher's mother, was killed by two blows to the head. Fincher's statement to the police, and his testimony at trial, was that he was sleeping in a chair in the front room of his home when an unknown person entered the house. In a sleep-like state, Fincher claimed, he twice struck the intruder with a bat he always kept there beside the chair. Fincher testified that it was only after striking the two blows that he realized that the intruder was his mother. He then tried to call his stepfather while washing some of the blood off the porch, and then took his mother to the hospital. The State introduced testimony that Fincher had said he hated his parents and wanted to kill them. A witness who was incarcerated with Fincher and gave the police a statement to the effect that Fincher deliberately killed his mother, refused to testify at trial on the crucial points. Blood spatter evidence and other physical evidence suggested the blows were struck out on the porch,

not inside as Fincher claimed.

1. The evidence adduced at trial was sufficient to authorize a rational trier of fact to find Fincher guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Fincher enumerates as error the denial of his motion to suppress evidence seized from the exterior of his home. The basis of the motion was that the police had entered into the curtilage of the property and begun their investigation without a warrant. The testimony at trial established that police officers were dispatched to the scene to determine whether there had been, as reported by Fincher, an accident. To do so, police officers went onto the property, and onto the porch, but not into the house. In the three hours between their entry onto the property and the issuance of a search warrant, the officers made observations which they used to support the application for a warrant, including blood spatter analysis. The trial court ruled that the officers were lawfully on the property and denied the motion.

Pretermitting the question of the legality of the initial entry onto the property, we uphold the denial of the motion to suppress on the principle that "[a] trial court's ruling on a motion to suppress will be upheld if it is right for any reason. [Cit.]" *Perez v. State*, 249 Ga. App. 399, 403 (3) (547 SE2d 699) (2001). The testimony taken during consideration of Fincher's motion to suppress established without dispute that Fincher and his stepfather returned to the house within an hour of the entry onto the property by the police and gave consent for a search. Fincher walked the police through his version of the events leading to his mother's death, inside the house and outside. In *State v. Sutton*, 258 Ga. 382 (2) (369 SE2d 249) (1988), where a law enforcement officer had entered the curtilage and observed contraband before receiving consent to search, this Court held that a consent to search " 'amounts to a waiver of the warrant requirement with respect to the search previously conducted' . . . [and ratifies] the prior warrantless entry into the curtilage. . . ." That being so, the consent to search given by Fincher and his stepfather cured any defect in the warrantless entry onto the property and authorized the denial of the motion to suppress.

3. Fincher complains that he was denied his right to confront a witness. The State called a witness to testify regarding statements allegedly made to the witness by Fincher while they were both in jail. When the witness refused to answer questions regarding what Fincher had said to him regarding his mother's death, the State was permitted over Fincher's objections to ask questions containing their own answers. "[T]he undeniable effect of this prosecutorial procedure was to place before the jury, through the questions asked, the content of [the witness]'s statement to the police, and the clear inference that

the defendant had made these incriminating statements to [the witness]." *Lawrence v. State*, 257 Ga. 423, 425 (3) (360 SE2d 716) (1987). However, though we strongly disapprove of the procedure permitted by the trial court, the issue was not preserved for appeal because Fincher did not renew his motion for mistrial after curative instructions were given. *Ford v. State*, 269 Ga. 139 (3) (498 SE2d 58) (1998) (defendant waived issue because he did not renew motion for mistrial after court gave curative instruction).

4. Fincher contends that the prosecuting attorney engaged in three different improper arguments during closing arguments. The first was a suggestion made twice during the argument that if the jury believed Fincher's version of the facts, it should "cut him loose, let him go." Fincher argues on appeal that the argument disregards the presumption of innocence and shifts the burden of proof. We find it susceptible of neither interpretation. This case involved an admitted killing, the question being whether Fincher deliberately killed his mother as the State alleged or killed her accidentally because he thought she was an unknown intruder into the house. The prosecuting attorney's argument merely called upon the jury to decide between the two versions of the crime they had heard.

The other allegedly improper arguments were misstatements of the evidence: in seeking to refute Fincher's testimony, the prosecutor stated that no blood was found on the porch when the undisputed evidence was that blood was found on the porch; and the prosecuting attorney attributed to one witness testimony given by other witnesses. Defense counsel objected to each misstatement when made and moved for a mistrial when the State's argument concluded. The trial court overruled the objections with no further comment or instruction to the jury and denied the motion for mistrial without giving any curative instructions.

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

OCGA § 17-8-75. The trial court in the present case failed to perform the duty imposed by the statute. Although such a failure can constitute reversible error (*Bolden v. State*, 272 Ga. 1 (525 SE2d 690) (2000)), the error is subject to application of harmless error analysis. *Sears v. State*, 259 Ga. 671 (5) (386 SE2d 360) (1989). Because the

misstatement regarding blood on the porch was arguably no more than an overstatement (most of the blood had been washed off the porch) of the evidence, because the mistaken attribution of testimony was insignificant in light of the fact that several witnesses had given similar testimony regarding Fincher's statements of anger toward his mother, and because the trial court told the jury in preliminary instructions and the prosecuting attorney reminded the jury in closing argument that the argument of counsel was not evidence, we conclude that it is highly probable that the trial court's error in failing to sustain Fincher's objections and perform its duty under OCGA § 17-8-75 did not contribute to the verdict.

5. Fincher contended at trial and contends on appeal that the prosecution violated his constitutional rights by failing to preserve potentially exculpatory evidence. The evidence involved was telephone records which the State hoped would show that Fincher's mother had arrived home and made a phone call before she was killed, which was inconsistent with Fincher's testimony that he mistook her for an intruder entering the house. Fincher asserts that the records would have refuted several elements of the State's case. The State subpoenaed the records, but nothing in the file showed receipt of the records. A telephone company representative testified that an employee of the sheriff's office asked that the records be held, and that the records were subsequently destroyed by their custodian in compliance with the telephone company's policies. The chief investigator in the case testified that he was aware of the telephone company's policy of destroying such records.

The State's duty to preserve evidence which may be exculpatory arises from the due process clause of the U. S. Constitution. *Arizona v. Youngblood*, 488 U. S. 51 (109 SC 333, 102 LE2d 281) (1988). A bad faith failure to preserve material evidence is a denial of due process. Id. The issue usually arises where the State has actual physical possession of evidence and fails to preserve it. See, e.g., *Brannan v. State*, 275 Ga. 70 (2) (c) (561 SE2d 414) (2002). If the State had never even tried to obtain the telephone records involved in this case, this issue would not have arisen because the State has no duty to seek out exculpatory evidence. *Pulliam v. Balkcom*, 245 Ga. 99 (9) (263 SE2d 123) (1980).

However, pretermitting the question of whether the issuance of the subpoena in this case was sufficient to trigger the State's duty to preserve the records the subpoena sought, Fincher has not shown a deprivation of due process. " 'In dealing with the failure of the state to preserve evidence which might have exonerated the defendant, a court must determine both whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence.' [Cit.]" *Brannan v. State*, supra at 74 (2) (c). In the present

case, the trial court concluded that there was no evidence that anyone with the sheriff's department acted in bad faith in connection with the failure to preserve the evidence. Although Fincher speculates about why the records were not collected and safeguarded, and assigns malignant motives to the chief investigator and the prosecution in general, our review of the record supports the trial court's holding that no bad faith was shown. At most, the record shows negligence in record keeping to be the cause of the failure to preserve the evidence. That being so, the trial court did not err in ruling that bad faith had not been shown. Id.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 24, 2003 —
RECONSIDERATION DENIED APRIL 11, 2003.

*Gary P. Bunch,* for appellant.

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jill M. Zubler, Assistant Attorney General,* for appellee.