A05A1164. SHARP v. THE STATE.
(621 SE2d 508)

SMITH, Presiding Judge.

David Sharp was charged by criminal information with hunting without a license, hunting over bait, and misdemeanor obstruction of law enforcement officers. After a bench trial, in which he appeared pro se, Sharp was found not guilty with respect to the bait charge and

guilty of hunting without a license and obstruction. His amended motion for new trial was denied, and he appeals.

The trial court entered a particularly thorough, well-reasoned, and comprehensive order on Sharp's motion for new trial, addressing each of the issues that Sharp raises before this court in his enumeration of errors. We can find no fault with the trial court's reasoning or its careful application of the law to the facts adduced at trial, and we therefore affirm.

1. Sharp asserts the general grounds with respect to his conviction for obstruction of an officer. Construing the record to support the verdict, Sharp acknowledged that he was hunting doves in an open field on his father's property without a hunting license. Two conservation rangers were patrolling dove fields on the opening day of dove season when they heard shots and "followed the shots to the field." As the rangers drove into the field, they saw two individuals "stand up from behind a round bale, look at us and take off across the fence and attempt to leave the area." Sharp testified that he saw the rangers and that he "did fade back into the woods" when he saw them. When one of the rangers asked "why we ran, I told him it was to avoid an encounter with an officer." He added at trial, "I'm ashamed that I ran."

Sharp contends that the evidence did not support a conviction for obstruction. In a novel argument based on Fourth Amendment law, he relies on *State v. Banks*, 223 Ga. App. 838 (479 SE2d 168) (1996) (physical precedent only), to contend that the rangers' investigation was a "first tier encounter" in the three tiers of police-citizen encounters and that Sharp therefore was "free to walk away from . . . purely a consensual encounter" without penalty. But even assuming without deciding that this line of cases has any application to a sufficiency of the evidence argument, this was not a "first tier encounter" but an encounter of the second type, a brief stop based upon a reasonable and articulable suspicion. *State v. Folk*, 238 Ga. App. 206, 207 (521 SE2d 194) (1999). "Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity." *State v. McKinney*, 265 Ga. App. 322, 323-324 (593 SE2d 865) (2004). "Flight is a circumstance sufficient to give an articulable suspicion of illegal activity. [Cit.]" *Tuggle v. State*, 236 Ga. App. 847, 849 (1) (c) (512 SE2d 650) (1999). Here, the circumstances, including the shots fired which caused the rangers to investigate and then Sharp's flight from the rangers as soon as he observed them, provided a reasonable and articulable suspicion that illegal activity had occurred or was occurring.

Sharp argues that evidence that he "faded back" or "ran" from the rangers was insufficient to show the offense of obstruction.

> To consummate an offense of misdemeanor obstruction, some form of knowing and wilful opposition to the officer sufficient to constitute obstruction or hinderance is required, but actual violence or threat thereof is not. Thus, for example, flight from police apprehension has been held to constitute sufficient opposition to support an obstruction charge.

(Citations omitted.) *Weidmann v. State*, 222 Ga. App. 796, 797 (2) (476 SE2d 18) (1996) (full concurrence in Division 2). "Argument, flight, stubborn abstinence, and lying are all examples of conduct that may satisfy the obstruction element. Whether a defendant's conduct has the effect of hindering or obstructing the officer in making his arrest is for the trier of fact to decide." (Citations omitted.) *Pinchon v. State*, 237 Ga. App. 675, 676 (516 SE2d 537) (1999). Here, evidence was presented from which the finder of fact could conclude that Sharp knowingly fled to avoid apprehension by the rangers.

Sharp also argues that the evidence was insufficient to prove obstruction as to the second ranger named in the indictment, who did not testify. But, as the trial court observed, ample testimony was elicited both from the testifying ranger and from Sharp himself that the second ranger was present, that he participated in the investigation, and that Sharp saw him and fled from him. The trial court did not err in denying Sharp's motion for new trial on the obstruction charge.

2. Sharp complains that his Fourth Amendment rights against unreasonable search and seizure were violated. He argues that the rangers' entry onto the property was illegal. But again, as observed by the trial court, all the evidence adduced at trial, including photographic exhibits and testimony, showed that Sharp and his companion were hunting in an open field. "[T]he Fourth Amendment's protection depends on whether a person has a reasonable expectation of privacy. A person may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." (Citations and punctuation omitted.) *Espinoza v. State*, 265 Ga. 171, 172 (2) (454 SE2d 765) (1995). And the property need not be visible from the public way to constitute an open field:

> In *Hester v. United States*, the United States Supreme Court held that even if the law enforcement agents had trespassed onto privately owned land an illegal search and seizure did not occur, because the special protection accorded by the Fourth Amendment to the people in their persons, houses, papers, and effects is not extended to the open fields. True,

the area at issue here was not open to casual view of a passerby on a public way but rather was secluded in the woods. But as the United States Supreme Court observed in *Oliver v. United States*[, an] open field need be neither "open" nor a "field" as those terms are used in common speech. For example a thickly wooded area nonetheless may be an open field as that term is used in construing the Fourth Amendment.

(Citations, punctuation and footnotes omitted.) *Quintrell v. State*, 231 Ga. App. 268, 270 (499 SE2d 117) (1998) (full concurrence as to this issue). In addition, OCGA § 27-1-20 (a) (6) authorizes conservation rangers "[t]o go upon property outside of buildings, posted or otherwise, in the performance of their duties." And

[w]hile it is true that statutes of this state cannot diminish rights guaranteed by the United States or Georgia Constitutions, the federal constitution does not proscribe entry on the type of property entered here without warrant by a law enforcement officer in pursuit of official duties. As [we have] held . . . , entry on posted private property did not constitute trespass onto a zone of privacy protected by the Fourth Amendment.

(Citations, punctuation and footnotes omitted.) *Quintrell*, supra at 270. The trial court did not err in denying Sharp's motion for new trial on this ground.

3. Finally, Sharp asserts that he did not knowingly and voluntarily waive his right to counsel. However, as the trial court noted, Sharp was carefully and thoroughly instructed on two different occasions "regarding his right to counsel, the risks and dangers of self-representation, and his other rights." Moreover, "the written advice and waiver of an attorney and a jury trial that [Sharp] signed is filed in the record." Sharp agreed at the hearing on the motion for new trial that he was informed of his constitutional rights and that "a lawyer would be better trained to handle the case and would be able to lay the foundation for appeals and would know defenses and the process of the court a lot better than [he] would," but that he chose to ignore that advice because "I thought I knew enough about it."

When the purported waiver of this right is questioned, the State bears the burden of showing that the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively

shows that the waiver was knowingly and voluntarily made. The question of whether a defendant is capable or incapable of making a knowing and intelligent waiver of his rights is to be answered by the trial judge and will be accepted by this court unless such determination is clearly erroneous.

(Citations and punctuation omitted.) *Whitaker v. State*, 256 Ga. App. 436, 439 (568 SE2d 594) (2002). Here, the record amply demonstrates that Sharp's right to counsel was explained fully to him and that his waiver was knowing and voluntary. The trial court's finding that Sharp properly waived a jury trial is not clearly erroneous.

Sharp argues that he was not specifically informed of certain trial strategies and procedures — for example the need to file a motion to suppress in writing[1] or to object to certain testimony. But the trial court explicitly instructed him that "[a] lawyer would have been trained in the rules of evidence and procedure, and if you represent yourself, you would be held to the same legal rules to which a lawyer would be held," and went on to give numerous examples of procedural matters within a lawyer's special knowledge. The trial court was not required to instruct Sharp in detail on every possible issue of law and procedure that might surface during the course of the trial. As the trial court noted in its order, Sharp was amply warned that such contingencies might occur.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED SEPTEMBER 13, 2005.

*Ross & Pines, Noah H. Pines*, for appellant.
*Stephen J. Tuggle, Solicitor-General*, for appellee.

---

[1] The trial court noted that Sharp had failed to file a written motion to suppress, but ruled upon it anyway.