# In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 05-3330

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN E. PARKER,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 05 CR 5—**Robert L. Miller, Jr.**, *Chief Judge.*

---

ARGUED NOVEMBER 9, 2006—DECIDED DECEMBER 1, 2006

---

Before BAUER, POSNER, and FLAUM, *Circuit Judges.*

BAUER, *Circuit Judge.* A jury convicted John E. Parker of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On appeal, Parker argues that the district court erred in denying his motion to suppress a rifle recovered by the police during the search of his home because his arrest without probable cause invalidated the search.[1] Parker also argues that the rifle is not a "firearm"

---

[1] At oral argument, Parker wisely withdrew the direct appeal of his claim of ineffective assistance of trial counsel, thereby preserving the claim for post-conviction review. *See United*

(continued...)

within the meaning of 18 U.S.C. § 921. We affirm both the district court's denial of Parker's motion to suppress and Parker's conviction.

## I. Background

On November 16, 2004, police officers were called to a house located at 629 East Haney Street in South Bend, Indiana in response to an armed disturbance. The South Bend Police Department had received at least one report of a firearm discharge outside of the house. Upon arrival, officers observed Parker leaving the house. Officer Christopher Bortone, who was not the first officer to arrive at the scene, took Parker into custody and placed him in a squad car. Other officers then conducted a protective sweep of the house but found no one present.

Soon after taking Parker into custody, Officer Bortone spoke with Linda Johnson, who was standing across the street from the house. Johnson lived with Parker at 629 East Haney and shared the house with him. According to Officer Bortone, Johnson was very upset. She was shaken and crying but rational. She told Officer Bortone that as she was leaving the house, she heard Parker fire a gunshot. (Johnson had not seen Parker fire the shot because her back was turned to him.) When she heard the gunshot, she

---

[1] (...continued)
*States v. Williams*, 272 F.3d 845, 854 (7th Cir. 2001) ("We believe these [ineffective assistance of counsel] claims are best brought in a collateral proceeding where the record can be fully developed, and not on direct appeal when most of the pertinent information is not yet in the record."); *Bond v. United States*, 1 F.3d 631, 635 (7th Cir. 1993) ("a defendant who presents an ineffective-assistance claim for the first time on direct appeal has little to gain and everything to lose").

turned and saw Parker standing behind her with a sawed-off shotgun.

Johnson told Officer Bortone and the other officers that she wanted the gun out of the house and gave the officers permission to search the house for the weapon. Officer Bortone and the other officers searched the house but did not find the shotgun. Johnson then returned to the house with the officers and instructed them to search the furnace in the basement. In the furnace, the officers discovered a bag containing a Westinfield 30/30 rifle with its butt removed. The officers also found a 12-gauge shotgun shell casing in the kitchen trash can. On January 12, 2005, a federal grand jury indicted Parker with one count of possessing a firearm as a felon.

Before trial, Parker moved to suppress the evidence obtained during the search of his house and statements that he made to the police following his arrest that implicated him in the possession of a firearm. He argued that any statements that he made were in violation of his rights under the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He also contended that the search of his home, without his consent or a warrant, violated the Fourth Amendment.

In a memorandum opinion and order dated March 28, 2005, the district court found that Parker had not stated a violation of either *Miranda* or the Fifth Amendment because there was no evidence that his statements were the result of a custodial interrogation. Noting Parker's failure to cite to any case in which a court suppressed statements made after an unlawful arrest in the absence of any other form of coercion, and the scant facts surrounding his arrest and his statements, the district court concluded that an evidentiary hearing was necessary to resolve whether there was probable cause for Parker's arrest and whether there was consent for the search of the house.

On April 11, 2005, the district court held an evidentiary hearing and issued a memorandum opinion, finding that Johnson, as a co-tenant of the house, had consented to the search of the house, which made the search reasonable.[2]

After a one-day trial, the jury returned a verdict, finding Parker guilty of being a felon in possession of a firearm. On August 2, 2005, the district court sentenced Parker to sixty-three months imprisonment. Parker filed a timely notice of appeal the following day.

## II. Analysis

Johnson argues that his conviction should be set aside because the government failed to demonstrate probable cause for his arrest. In the absence of probable cause, Johnson argues that the subsequent search of his home was invalid and that the district court erred in refusing to suppress the rifle that the police recovered during the search. Johnson also contends that the rifle is not a "firearm" within the meaning of 18 U.S.C. § 921.

### A. The Rifle Was Recovered Pursuant to a Valid Consent to Search

On appeal from the denial of a motion to suppress, we review the district court's factual findings for clear error and questions of law *de novo*. *United States v. Grap*, 403

---

[2] At oral argument, counsel for the government stated that he had informed Parker's trial counsel before the evidentiary hearing of the government's intention not to use Parker's statements during trial. As a result, neither party addressed whether there was probable cause for Parker's arrest during the evidentiary hearing, and the district court did not rule on whether there was probable cause for Parker's arrest.

F.3d 439, 443 (7th Cir. 2005). Since the resolution of a motion to suppress is a fact-specific inquiry, we give deference to the credibility determinations of the district court, which had the opportunity to listen to testimony and observe the demeanor of witnesses at the suppression hearing. *United States v. Marshall*, 157 F.3d 477, 481 (7th Cir. 1998).

With few exceptions, the Fourth Amendment generally requires that the issuance of a warrant supported by probable cause precede any search. *Stanley v. Henson*, 337 F.3d 961, 963 (7th Cir. 2003). Evidence that is seized during an unlawful search cannot be used against the victim of the unlawful search "unless the government can show that it was obtained as a result not of the illegality, but rather 'by means sufficiently distinguishable to be purged of the primary taint.'" *United States v. Swift*, 220 F.3d 502 at 507 (7th Cir. 2000) (quoting *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)). The Fourth Amendment's probable cause and warrant requirements do not apply, however, where an authorized party voluntarily consents to a search. *United States v. Johnson*, 427 F.3d 1053, 1056 (7th Cir. 2005) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Melgar*, 227 F.3d 1038, 1041 (7th Cir. 2000)). Because Johnson had authority to consent to the search of the house and consented to the search, we find that the district court properly denied Parker's motion to suppress.

At the suppression hearing, the district court heard testimony from Johnson, Officer Bortone, and Officer Karl Karch, an officer with the Bureau of Alcohol, Tobacco, and Firearms' Task Force Project. After listening to their testimony and observing the witnesses' demeanor, the district court concluded that Johnson was Parker's co-tenant at 629 East Haney and that she had consented to the search of the residence.

In his appeal, Parker does not challenge the district court's finding that Johnson was Parker's co-tenant or that she consented to the search; rather, he asserts that a co-tenant's consent cannot override the objection of a co-tenant who is either present or who is prevented from objecting due to an unlawful arrest. There is no evidence, however, that Parker was asked for his consent to search the house and that he refused or that he objected in any way to a search of the house. The absence of such evidence removes this case from the purview of the Supreme Court's recent decision in *Georgia v. Randolph*, ___ U.S. ___, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).

In *Randolph*, the Supreme Court held that a warrantless search with the permission of one co-tenant is unreasonable and invalid as to a co-tenant who is physically present at the scene and expressly refuses to consent to the search. 126 S.Ct. at 1519. Both the physical presence of the defendant and his express refusal to consent to the search distinguished *Randolph* from the Court's decision in *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), in which it held that a consent to a warrantless search by someone with common authority over the premises is valid as against an absent, non-consenting person with whom the authority is shared. The Court recognized in *Randolph* the fine line that it was drawing between its holding in that case and its holding in *Matlock*: "[I]f a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." *Randolph*, 126 S.Ct. at 1527.

Here, as in *Matlock*, the police had taken Parker into custody and removed him from the premises before asking a co-tenant for her consent to search the property. At oral argument, Parker conceded the propriety of the police officers conducting a protective sweep of the house and

taking Parker into custody, as the officers had arrived at the house in response to a report of a gunshot and needed to ensure the safety of anyone who was in the house. When they arrived at the house, the police officers discovered Parker leaving the house. Officer Bortone then took Parker into custody and placed him in the squad car.[3]

Again, as in *Matlock*, Parker was nearby but not invited to take part in the inquiry as to whether the officers could search the house. The officers asked Johnson for her consent, which she gave. The officers then conducted a search of the house pursuant to her consent. Parker does not argue or point to anything in the record that even hints at the possibility that the police had taken him into custody as a mechanism for coercing Johnson's consent. So Johnson's consent to the search was valid as against Parker.

Moreover, Johnson's consent to the search, the consent of a third party with authority over the premises being searched, was sufficiently attenuated from Parker's arrest to render the search valid, whether Parker's arrest was with or without probable cause. In *Brown v. Illinois*, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 2261-62, 45 L.Ed.2d 416 (1975), the Supreme Court identified three factors for determining whether the causal chain has been sufficiently attenuated to dissipate the taint of illegal conduct: (1) the

---

[3] The precise circumstances surrounding Parker's arrest are unclear from the record. We do not know the content of the telephone call to the police station that notified the officers of the armed disturbance; who made the call; which officers were first to arrive at Parker's house; Parker's exact location when the officers arrived at the house; whether the officers knocked on the door or the door was open; or how or when exactly Officer Bortone arrested Parker. In his motion to suppress, Parker stated as a fact on which his motion was based that, upon arriving at the house, officers observed Parker leave the residence. He was then handcuffed and placed in a squad car.

time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *United States v. Green*, 111 F.3d 515, 521 (7th Cir. 1997). "In the final analysis, however, the question is whether the evidence came from the 'exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Id.* (quoting *Wong Sun*, 371 U.S. at 488, 83 S.Ct. at 417).

While the amount of time elapsing between Parker's arrest and Johnson's consent to the search is unclear, the record suggests that it was a matter of minutes. The time span between the claimed police misconduct and the search is not dispositive, however. *Id.* (citing *United States v. Fazio*, 914 F.2d 950, 958 (7th Cir. 1990)). We instead consider whether intervening circumstances were present.

In this case, Johnson's consent to the search constitutes an intervening circumstance that is not outweighed by official misconduct, even assuming that Parker's custodial detention developed into an arrest without probable cause. *Cf. United States v. Cellitti*, 387 F.3d 618, 623 (7th Cir. 2004) (holding invalid a consent to search given by a defendant who was placed in handcuffs, driven to police station, locked in a holding cell, and chained to a bench for several hours after an arrest without probable cause because consent was tainted by illegal arrest). Johnson's consent to the search was an act of free will independent of Parker's arrest. *See United States v. Pedroza*, 269 F.3d 821, 827 (7th Cir. 2001). That Parker was not asked for his consent and did not have an opportunity to object to the search does not render invalid Johnson's voluntary consent. The district court properly denied Parker's motion to suppress.

### B. Parker Waived Any Argument That The Rifle Is Not a Firearm

Parker argued in his opening brief that the Westinfield 30/30 rifle is not a firearm within the meaning of 18 U.S.C. § 921. Parker appears to have abandoned any argument in this regard in his reply brief. In any event, Parker waived this argument at trial. Waiver is the intentional relinquishment and abandonment of a known right, which precludes appellate review. *United States v. Thigpen*, 456 F.3d 766, 769 (7th Cir. 2006) (citing *United States v. Ortiz*, 431 F.3d 1035, 1038 (7th Cir. 2005)). During closing argument, Parker's counsel expressly admitted that the rifle met the legal definition of a firearm.[4] Accordingly, we will not review Parker's conviction on the basis that the rifle did not meet the definition of a firearm under § 921.

### III. Conclusion

For the foregoing reasons, Parker's conviction is AFFIRMED.

---

[4] Parker's counsel stated:

> There's no argument that that's a firearm. You're not going to hear me stand up and say, "That's not a firearm because it doesn't work." I'll talk in a minute about why its not working has some significance, but it's not because not working doesn't make it a firearm. That meets the legal definition of a firearm. Now, I'm not going to stand here and tell you it doesn't.

Trial Transcript at 189.

A true Copy:

    Teste:


              _____
              *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*