S06A1850. SPENCE v. THE STATE.
(642 SE2d 856)

SEARS, Chief Justice.

We granted an application for interlocutory appeal filed by the appellant, Lemuel Spence, to consider whether the trial court erred in ruling that Spence's confession was admissible in evidence and that evidence discovered during a search of Spence's residence was admissible. For the reasons that follow, we conclude that the trial court erred in ruling that Spence's confession was admissible in evidence, but that the court properly ruled that the evidence discovered during the search was admissible. Accordingly, we affirm the trial court's judgment in part and reverse it in part.

1. On September 20, 2003, Spence was arrested for the rape of Latasha Files. The rape case is unrelated to the present murder case, which stems from the stabbing death of Tereon Grant. After his arrest

for rape, Spence was interrogated by Detective Quinn regarding the murder of Grant. During the interrogation, Spence was read his *Miranda* rights, which he signed. In the first hour of the interrogation, Spence said nothing to implicate himself. Spence then broke down in tears and asked if he could talk to his girlfriend. At that point, the following exchange took place:

> Quinn: Just you and me, just you and me.
> Spence: I'm just scared when I go to jail, everybody gonna know I said something.
> Quinn: Lem, ain't nobody saying nothing, this is confidential. Nobody knows what you're there for. What are you talking about? I don't understand.
> Spence: I mean, not [what I'm] there for. I mean I don't want anybody to think that I (unintelligible).
> Quinn: No, that's not going to happen. This is confidential what we're doing right here. Do you understand that? This is confidential. . . .
> Spence: . . . what happened.
> Quinn: Tell me what happened down there, Lem. What happened down there.

After this last statement by Detective Quinn, Spence gave a statement incriminating himself in the murder.

Later on the same day as the interrogation, Detective O'Brien, who was investigating the rape case, received a warrant to search "4900 Delano Road Apartment D-2" in Fulton County. O'Brien's affidavit in support of the warrant specified the address of the premises to be searched, the items sought, and briefly described the alleged rape to which the items related.

At the hearing on the motion to suppress, Detective Quinn testified that he "tagged along" with Detective O'Brien when the search warrant was executed, and that Airrion Moore, Spence's roommate, was present when the search occurred. Quinn testified that he watched O'Brien conduct his search; that O'Brien found a pair of shoes relating to the rape charge in a kitchen closet; that the closet where the shoes were found was dark; that he (Quinn) wanted to look further in the closet; and that he then had Moore execute a consent-to-search form so that he could search the closet. Quinn added that he searched the kitchen closet and found a purse that fit the description of a purse that belonged to the murder victim. O'Brien testified that Quinn had Moore sign the consent form after he (O'Brien) had finished his search.

Following his indictment, Spence moved to suppress his statement on the ground that it was made in response to a false representation that the statement would be kept confidential. The trial court denied the motion, finding that Quinn promised Spence that his statement would be kept confidential from other people in jail, but did not promise Spence that his statement would not be used against him at trial.

Spence also moved to suppress the evidence found at the apartment on the ground that the search warrant failed to contain sufficient facts to establish probable cause that evidence of a crime would be found at the residence. The trial court denied the motion finding that the evidence was found pursuant to a valid search warrant and that Detective Quinn's search was pursuant to a valid consent-to-search form signed by Moore.

2. Spence contends that his confession was inadmissible in evidence because it was made in response to a false representation that the interrogation was confidential. In this regard, Spence relies on *Hopkins v. Cockrell.*[1] In that case, the police detective conducting an interview with the defendant assured the defendant that "their conversation was confidential telling [the defendant], 'This is for me and you. This is for me. Okay. This ain't for nobody else.' "[2] The court ruled that the defendant's confession was involuntary, stating that "[a]n officer cannot read the defendant his *Miranda* warnings and then turn around and tell him that despite those warnings, what the defendant tells the officer will be confidential and still use the resultant confession against the defendant."[3]

Spence also relies on this Court's decision in *Foster v. State.*[4] In *Foster*, the defendant made a confession "after he was told repeatedly that it was not going to hurt 'a thing,' and that it would be 'as much for your benefit as ours.' "[5] We held that "[a]n accused must be warned that anything he says can and will be used against him in court. Telling him that a confession is not going to hurt and, on the contrary, will benefit him as much as the police, is not consistent with the warnings required by *Miranda.*"[6]

We find that the present case is controlled by the rationale of the foregoing cases. Although the State contends that Detective Quinn's statement regarding confidentiality meant that what Spence told him would be confidential only as it related to other prisoners and not

---

[1] 325 F3d 579 (5th Cir. 2003).

[2] Id. at 584.

[3] Id. at 585.

[4] 258 Ga. 736 (374 SE2d 188) (1988).

[5] Id. at 742.

[6] Id. (citation omitted).

as it related to other uses, including the use of the statement in court, Detective Quinn's statement was not so qualified. "Confidential" is defined as "not publicly disseminated: private, secret."[7] Thus, it would have been reasonable for Spence to understand Quinn's statement that their interview was confidential as an unqualified statement that what Spence told Quinn would be kept confidential between the two of them, and would not be disclosed to anyone else. Accordingly, we conclude that the trial court erred in ruling that Spence's statement to Quinn was admissible.[8]

3. Spence next contends that the trial court erred by denying his motion to suppress all the evidence that was found at his home pursuant to the police search. More specifically, Spence contends that the officer's affidavit given in support of the search warrant failed to establish probable cause that evidence of the crime would be found at the residence. We conclude, however, that we need not resolve this issue, as, even assuming that Spence's contention is correct, we conclude that the evidence discovered pursuant to the search was sufficiently attenuated from any illegality to be admissible.

In this regard, the issue is whether, assuming the illegality of the search, the evidence discovered was the result of the illegality or had " 'become so attenuated [from the primary illegality] as to dissipate the taint.' "[9] In *Brown v. Illinois*, the Supreme Court held that this issue must be "answered on the facts of each case" and that "[n]o single fact is dispositive."[10] To make this determination, the Court in *Brown* set forth several factors for courts to consider, including "the time elapsed between the illegality and the acquisition of the evidence; the presence of intervening circumstances; and the purpose and flagrancy of the official misconduct."[11]

Several courts have considered the effect of a third party's consent to conduct a search after the police have entered a defendant's residence pursuant to an invalid warrant. For example, in *Parker*, the defendant's roommate consented to a search of their

---

[7] Webster's Third New International Dictionary, 1976, p. 476.

[8] The trial court's application of the law to the undisputed facts regarding Spence's confession is subject to de novo review on appeal. *State v. Ray*, 272 Ga. 450, 450 (531 SE2d 705) (2000).

[9] *Wong Sun v. United States*, 371 U. S. 471, 487 (83 SC 407, 9 LE2d 441) (1963), quoting *Nardone v. United States*, 308 U. S. 338, 341 (60 SC 266, 84 LE 307) (1939).

[10] 422 U. S. 590, 603 (95 SC 2254, 45 LE2d 416) (1975).

[11] *United States v. Parker*, 469 F3d 1074, 1078-1079 (7th Cir. 2006). See *Brown*, 422 U. S. at 603-604; *Daniel v. State*, 277 Ga. 840, 847 (597 SE2d 116) (2004). Although the trial court in the present case did not analyze the factors set forth in *Brown* to determine whether the taint of the illegal search had been purged, this Court may conduct the analysis as the record is "of amply sufficient detail and depth from which the determination may be made." *Brown*, 422 U. S. at 604.

house for the purpose of locating evidence of a crime allegedly committed by the defendant but not by the roommate. The court in *Parker* held that, although the consent to search was obtained only a few minutes after the illegal conduct, that factor was not dispositive and did not require suppression of the evidence.[12] Instead, the court concluded that the roommate's consent to search, which was freely and voluntarily given, was an independent act of free will by the roommate that was not outweighed by the misconduct in that case.[13] Similarly, in *Kyer v. Commonwealth*,[14] the court held that the defendant's mother's voluntary consent to search her apartment, which uncovered incriminating evidence against her son, was " 'sufficiently an act of free will to purge the primary taint.' "[15]

Analyzing the attenuation factors set forth in *Brown* to the present case, we turn first to the time factor. In this regard, Moore's consent to search occurred during the ongoing, assumed illegal search of the apartment. Thus, there is effectively no lapse of time between the assumed illegal conduct and Moore's consent. The record, however, shows that the duration of the search had no bearing on Moore's consent.

As for intervening circumstances, the record shows that Moore executed a consent-to-search form that informed him that he had the right to refuse the consent to search; that he could revoke the consent to search at any time; that he had not been promised anything in exchange for his consent; and that he had not been threatened or compelled to give the consent.[16] Moreover, the Supreme Court in *Brown* specified that the attenuation analysis must be "answered on the facts of each case."[17] In the present case, a significant factor supporting a finding that Moore's consent was not a product of the illegal conduct, but was instead a product of his free will is that he was not the target of the officer's investigation.[18]

As for the police misconduct in this case, even though we have assumed that the officer's affidavit given in support of the search warrant failed to establish probable cause that evidence of the crime would be found at Spence's residence, the illegality lacks any of the purposefulness or flagrancy that the Supreme Court weighed against

---

[12] *Parker*, 469 F3d at 1078-1079.

[13] Id.

[14] 612 SE2d 213 (Va. Ct. App. 2005).

[15] *Kyer*, 612 SE2d at 220, quoting *Wong Sun*, 371 U. S. at 486.

[16] In this regard, "[t]he record fully supports a finding that the consent to search was valid." *Parker v. State*, 256 Ga. 543, 545-546 (350 SE2d 570) (1986).

[17] *Brown*, 422 U. S. at 603.

[18] See *Wisconsin v. Richter*, 612 NW2d 29, 33 (Wis. 2000) (the fact that the defendant was not a target of the search "was sufficient to allow Richter to freely consent to the search").

the government in *Brown*.[19] There, two police detectives, who acted without probable cause and a warrant, broke into Brown's apartment, conducted a search, pointed guns at Brown when he arrived home, and arrested him.[20] Clearly, the degree of flagrant misconduct and coercion that was present in *Brown* is not present here.

Evaluating the foregoing attenuation factors, we conclude that Moore's consent to search was an act of free will that was sufficiently attenuated from any assumed illegality of the officer's search. Accordingly, the evidence discovered pursuant to the search was admissible.[21]

4. For the foregoing reasons, we conclude that the trial court erred in ruling that Spence's statement was admissible in evidence, but did not err in ruling that the evidence discovered pursuant to the search was admissible.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Carley, J., who concurs in part and dissents in part.*

CARLEY, Justice, concurring in part and dissenting in part.

After conducting hearings, the trial court found that Spence's confession to murder was admissible against him and that a search of his apartment was valid. Today, a majority of this Court affirms the denial of Spence's motion to suppress evidence obtained in the search, and I concur fully in that holding. As to the confession, however, the majority substitutes its own contrary findings for those reached by the trial court, and holds that Spence's statement is inadmissible at trial. Because I believe that the trial court was correct in its ruling on the admissibility of the confession, I respectfully dissent to the reversal of the judgment in that regard.

The majority acknowledges that, prior to his interrogation, Spence received the warnings mandated by *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966) and that he expressly waived his rights. Thus, it is undisputed that, before being questioned, he was advised that anything he said to Detective Quinn could be used against him in court and that, notwithstanding this admonition, he agreed to waive his right to remain silent and to proceed with the interrogation.

Spence nevertheless urges, and the majority agrees, that his confession is inadmissible because, in the course of the ensuing questioning, Detective Quinn told him that the statement would remain "confidential." In accepting this argument, the majority

---

[19] *Brown*, 422 U. S. at 605.

[20] Id. at 592.

[21] See *Fincher v. State*, 276 Ga. 480, 481 (578 SE2d 102) (2003); *State v. McBride*, 261 Ga. 60, 62 (401 SE2d 484) (1991); *State v. Sutton*, 258 Ga. 382 (369 SE2d 249) (1988).

overly emphasizes the detective's use of the word "confidential," while failing to give proper consideration to the actual context in which that word was used. The dispositive issue is not whether the interrogator used the word "confidential," but whether his comments were such as to vitiate the *Miranda* warnings and waiver which Spence had previously given. Neither lying nor the use of trickery to obtain a confession will render an accused's statement inadmissible "so long as ' "the means employed are not calculated to procure an untrue statement." ' [Cit.]" *DeYoung v. State*, 268 Ga. 780, 789 (8) (493 SE2d 157) (1997). Thus,

> trickery or deceit is only prohibited to the extent that it deprives the defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them. [Cit.] "Neither mere emotionalism and confusion, nor mere trickery will alone necessarily invalidate a confession." [Cit.]

*Hopkins v. Cockrell*, 325 F3d 579, 584 (5th Cir. 2003). Accordingly, the *Miranda* warnings having been given and Spence having waived his rights, the confession should not be suppressed unless

> [i]t is clear from the context of the confession itself and its surrounding circumstances that [Detective Quinn's] conduct . . . passed the line into the sort of lying that deprives a defendant "of the knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." [Cit.] . . . An officer cannot read the defendant his *Miranda* warnings and then turn around and tell him that despite those warnings, what the defendant tells the officer will be confidential and still use the resultant confession against the defendant.

*Hopkins v. Cockrell*, supra at 584-585. Therefore, "[t]elling [an accused] that a confession is not going to hurt and, on the contrary, will benefit him as much as the police, is not consistent with the warnings required by *Miranda*." *Foster v. State*, 258 Ga. 736, 742 (8) (b) (374 SE2d 188) (1988).

However, in this case, the trial court found that the officer had not crossed the veracity line and that, consequently, Spence had not been deprived of the benefit of the *Miranda* warnings which preceded the interrogation. In making that determination, the trial court, unlike the majority, correctly focused on the context in which Detective Quinn made the "confidential" comment. He neither explicitly nor implicitly promised that, contrary to the previously given *Miranda*

warnings, Spence's statement would not be used against him in court. Compare *Foster v. State*, supra; *Hopkins v. Cockrell*, supra. Instead, the officer simply responded to Spence's expression of fear that "when he [got] to *jail*, everybody gonna know I said something. . . . I mean, not [what I'm] *there* for. I mean I don't want anybody to think I (unintelligible)." (Emphasis supplied.) The trial court found that the assurance that the statement would remain "confidential" was a limited promise that the officer would not divulge its contents to other inmates who were, in Spence's own words, "there" in "jail." The trial court concluded that

> it is clear that the promise of confidentiality made to [Spence] by Detective Quinn was in direct response to [Spence's] concern that anything he said would get back to the people in jail and they would know he had talked. This is not the same as promising [Spence] that his statement would be kept confidential in the context of what would or would not be used against him in a court of law. To this extent, . . . [Spence's] confession was not made in response to a false police representation that the confession would not be used against [him] at trial, nor was the promise of confidentiality made to [Spence] by Detective Quinn inconsistent with his *Miranda* warnings such that the confession should be suppressed.

The majority does not hold that, under the totality of the circumstances, the trial court's finding was clearly erroneous. Instead, in determining the meaning of Detective Quinn's responses the majority simply dismisses the context in which the promise as to confidentiality was made. I respectfully submit that, in doing so, the majority fails to follow the long-standing controlling standard for determining the admissibility of an accused's confession.

> "The standard for determining the admissibility of confessions is the preponderance of evidence. To determine whether the [S]tate has proven that a confession was made voluntarily, the trial court must consider the totality of the circumstances. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal." [Cit.]

*Bell v. State*, 280 Ga. 562, 564 (2) (a) (629 SE2d 213) (2006). The totality of the circumstances, which must include the expression of the fear of disclosure expressed by Spence himself, did not demand a finding that the promise as to confidentiality was an unqualified and

untrue statement on Detective Quinn's part that, contrary to the *Miranda* warnings previously given, an incriminating admission would not be used against him in court. Therefore, the majority erroneously disregards the trial court's finding of fact and thereby prevents the State from introducing into evidence Spence's clearly admissible confession to the murder for which he is being tried.

DECIDED MARCH 19, 2007.

*Pate & Brody, Bernard S. Brody*, for appellant.
*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General*, for appellee.