Filed 11/10/14  P. v. Herrera CA5
Opinion on remand from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br>MARCELO ANTONIO HERRERA,<br><br>    Defendant and Appellant. | F064425<br><br>(Super. Ct. No. VCF240348A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Valeriano Saucedo, Judge.

Janet J. Gray, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Larenda R. Delaini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

### INTRODUCTION

The California Supreme Court, on September 10, 2014, granted a petition for review of our opinion in this case filed June 13, 2014, and transferred the case to this court with directions to vacate our decision and reconsider the enhancements imposed in

this case under Penal Code[1] section 667, subdivision (a)(1), in light of *People v. West* (1984) 154 Cal.App.3d 100, 107-108 (*West*) and *People v. Smith* (2003) 110 Cal.App.4th 1072, 1080, fn. 10 (*Smith*). We have received supplemental briefing from appellant Marcelo Antonio Herrera (defendant) and have considered the authority cited in the transfer order. The opinion of this court, filed June 13, 2014, is vacated and we issue this new opinion in accordance with the directions of the Supreme Court.

A jury found defendant guilty of attempted murder §§ 664, 187, subd. (a); count 1), aggravated mayhem (§ 205; count 2), first degree burglary (§§ 459, 667.5, subd. (c); count 3), first degree robbery (§ 221; counts 4 -5), assault with a deadly weapon (§ 245, subd. (a)(1); counts 6-7), and active participation in a criminal street gang (§ 186.22, subd. (a); count 8). The jury also found true allegations that defendant committed counts 1 through 7 for the benefit of, at the direction of, or in association with a criminal street gang. (§ 186.22, subd. (b)). In addition, the jury found defendant personally used a deadly weapon (§ 12022, subd. (b)(1)) and inflicted great bodily injury (§ 12022.7, subd. (a)) in the commission of counts 1 through 6.

After finding true allegations that defendant suffered two prior strike convictions (§ 667, subds. (b)-(i)), two prior serious felony convictions (§ 667, subd. (a)(1)), and two prior prison terms (§ 667.5, subd. (b)), the trial court sentenced defendant to prison for an aggregate term of 120 years to life as follows: 45 years to life for his conviction of aggravated mayhem in count 2, plus one year for the firearm enhancement, and three years for the great bodily injury enhancement; 25 years to life for his conviction of robbery in count 4, plus 10 years for the gang enhancement; and 25 years to life for his conviction of robbery in count 5, plus 10 years for the gang enhancement and one year for the firearm enhancement. Additional terms were imposed on the remaining counts and stayed pursuant to section 654.

---

[1] Further statutory references are to the Penal Code unless otherwise specified.

On appeal, defendant contends: (1) the trial court erred in denying his pretrial motion to suppress his police statement; (2) the trial court erred by failing to give a clarifying instruction on the meaning of the term "in association with a criminal street gang"; (3) insufficient evidence supports the gang enhancements and the offense of active participation in a criminal street gang; (4) the trial court abused its discretion and violated his due process rights when it admitted evidence of his uncharged offenses; (5) the prosecution failed to establish his prior juvenile adjudication for assault by force likely to produce great bodily injury qualified as a strike; and (6) the trial court's reliance on defendant's prior juvenile adjudications to enhance his sentence violated his Sixth Amendment right to a jury trial. The People contend the trial court erred by failing to impose the five-year prior serious felony conviction enhancements pursuant to section 667, subdivision (a)(1). We reject the parties' contentions and affirm the judgment.

## FACTS[2]

Around 3:00 a.m. on July 11, 2010, Agustin Maldonado responded to a knock at the door and two men—later identified as defendant and Jario Aguiniga—pushed their way into Maldonado's house. They knocked Maldonado to the floor and "knifed" him in the face, arms, and stomach. When Maldonado tried to get up, he was knifed in the neck. Maldonado saw a single blade during the attack, but he could not tell which one of the men held the knife. They were both on top of him at first. They also struck Maldonado with their hands and feet.

After attacking Maldonado, the two men pursued Juan Carlos Bernal, one of Maldonado's houseguests, to a bedroom where they demanded money. Bernal identified defendant and testified that defendant shoved him and showed him a knife, while saying they were going to kill him. Defendant then knocked Bernal onto the bed and took his

---

**2**      In light of the contentions raised on appeal, a detailed recitation of the facts of the underlying offenses is unnecessary. Relevant facts will be set forth as necessary in our discussion of appellate issues.

wallet and cell phone. Meanwhile, defendant's companion went through the room, pulling out drawers and looking for money.[3] After finding ammunition in one of the drawers, they became angry and started asking Bernal the location of the gun, which Bernal did not know. When they were unable to find a gun, they said "Let's go."

Defendant was tied to the July 11, 2010, incident by fingerprint evidence found at Maldonado's residence and another residence located on the same property. Defendant was subsequently arrested and made incriminating statements during an interview with Porterville Police Detective Richard Carrillo, implicating himself in the robbery but denying he stabbed Maldonado.

Porterville Police Officer Christopher McGuire testified as an expert regarding criminal street gangs. In McGuire's opinion, defendant was an active member of the Varrio Central Poros (VCP) gang, a local Norteño gang in Porterville, and Aguiniga was an active member of the Eastside Varrio Poros (ESVP) gang, another local Norteño gang. Presented with a hypothetical based on the circumstances of the July 11, 2010, incident, McGuire opined the crimes were committed in association with a criminal street gang "because you have two active documented gang members associating with one another" and "assisting one another" in committing the crimes. There was also "a benefit in getting a firearm potentially" as "a firearm is the most sought-after weapon for a gang."

### DISCUSSION

#### I.      Motion to Suppress

Defendant's first contention is that the trial court erred in denying his motion to suppress the statement he gave to the police following his arrest. This contention is based on exchanges between defendant and Carrillo, which occurred after defendant asserted his *Miranda*[4] rights but then shortly thereafter changed his mind and initiated further

---

**3**      After the incident, Maldonado discovered a watch and a few items of jewelry were missing from his bedroom.

**4**      *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

4

conversation with the detective. Defendant contends that the detective's express promises to keep his statement confidential vitiated the previous *Miranda* advisements and defendant's waiver of his rights. We are not persuaded.

### A.  Background

The first pertinent exchange was as follows:

"DET. CARRILLO:  Okay.  Now we're going to start over, Marcelo. You remember I read you your rights.  You understand all those.  Okay? We talked about it.  You chose to talk to a lawyer.  I guess, you said after you gave it some thought— right?  —you go down and thought about it—

"MR. HERRERA:  Yeah.

"DET. CARRILLO:  —You wanted to voluntarily tell me what's going on and try helping us out.

"MR. HERRERA:  (Inaudible.)  I can—you don't understand. Like—

"DET. CARRILLO:  —I appreciate your honesty because, like I said—

"MR. HERRERA:  I want to be honest—I want to be honest with you.

"DET. CARRILLO:  You can't lend your prints to somebody, you know that I'm saying.

"MR. HERRERA:  Well, I need you to tell me, sir, that—I need you to let me know that this is going to be confidential—like, nobody's going to know that I said anything—

"DET. CARRILLO:  Okay.

"MR. HERRERA:  —except the judge and whoever else—

"DET. CARRILLO:  If—if you're—if there's somebody else you're going to implicate in this, we can keep it in confidence.

5

"MR. HERRERA:  (Inaudible.)

"DET. CARRILLO:  If we write—if we write search warrants, your name stays out of it.

"MR. HERRERA:  It is going to be—it is somebody that—I just know—I know that—I know the nickname.

"DET. CARRILLO:  Okay.

"MR. HERRERA:  I don't know—I don't know (inaudible).  I need to know that it's going to be confidential.

"DET. CARRILLO:  Yes.

"MR. HERRERA:  Yes.

"DET. CARRILLO:  Yes.

"MR. HERRERA:  You're telling me you're honest, like—

"DET. CARRILLO:  I wouldn't—I wouldn't lie to you.

"MR. HERRERA:  All right.  Look here.  You know somebody by the name of Millhouse from—from the east side?

"DET. CARRILLO:  No."

 Later in the interview, this exchange occurred:

"MR. HERRERA:  But, sir, I need to know that it's going to be confidential because my life is in danger now.

"DET. CARRILLO:  No, it's going to be confidential.

"MR. HERRERA:  Like, my life's really in danger.  I can't, like— you don't understand.

"DET. CARRILLO:  Okay.  I have to—I have to document in a report of what happened.  We—trust me.  We protect people with every means possible.  Okay?"

## B.    *Applicable Legal Principles*

The Fifth Amendment to the United States Constitution guarantees that a suspect in a criminal case "may not be compelled to be a witness against himself in any respect."

(*Colorado v. Spring* (1987) 479 U.S. 564, 574.)  "To protect the Fifth Amendment privilege against self-incrimination, a person undergoing a custodial interrogation must first be advised of his right to remain silent, to the presence of counsel, and to appointed counsel, if indigent.  [Citation.]  As long as the suspect knowingly and intelligently waives these rights, the police are free to interrogate him.  [Citation.]"  (*People v. Stitely* (2005) 35 Cal.4th 514, 535.)  The waiver inquiry has two aspects.  "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.  [Citations.]"  (*Moran v. Burbine* (1986) 475 U.S. 412, 421.)

"Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law."  (*Moran v. Burbine*, *supra*, 475 U.S. at pp. 422-423, fn. omitted.)  If, however, "the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.  At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise."  (*Miranda*, *supra*, 384 U.S. at pp. 473-474, fn. omitted.)  "If a suspect's request for counsel or invocation of the right to remain silent is ambiguous, the police may 'continue talking with him for the limited purpose of clarifying whether he is waiving or invoking those rights.'  [Citations.]"

7

(*People v. Box* (2000) 23 Cal.4th 1153, 1194.) Statements obtained in violation of these rules are inadmissible to prove guilt. (*People v. Stitely*, *supra*, 35 Cal.4th at p. 535.)

"In considering a claim that a statement or confession is inadmissible because it was obtained in violation of a defendant's rights under *Miranda* …, we accept the trial court's resolution of disputed facts and inferences, and its evaluation of credibility, if supported by substantial evidence. [Citation.] Although we independently determine whether, from the undisputed facts and those properly found by the trial court, the challenged statements were illegally obtained [citation], we "'give great weight to the considered conclusions" of a lower court that has previously reviewed the same evidence.' [Citations.]" (*People v. Wash* (1993) 6 Cal.4th 215, 235-236.)

### C.     Analysis

Here, the totality of the circumstances surrounding the interrogation reveal that defendant's choice to speak with Carrillo was uncoerced and defendant understood his statements could be used against him in court. Defendant's assertions to the contrary are unsupported by the record. During the suppression hearing, Carrillo testified that, after defendant changed his mind and initiated further conversation with the detective, defendant "only expressed to me one concern," which was "[t]hat he did not want to be labeled as a rat to his associate gang member friends as well as his family or … the mother of his child." Therefore, it was Carrillo's understanding that, when defendant referred to his statements being kept confidential, defendant was referring to the detective not disclosing his statements to his family and gang associates; defendant indicated he was aware his statement could be shared with the judge and others, plus Carrillo specifically advised defendant he would have to document in a report what defendant said during the interview. The interview transcript supports Carrillo's interpretation of defendant's references to confidentiality as pertaining to his personal contacts.

8

The cases defendant cites from other jurisdictions are inapposite. In *Spence v. State* (2007) 281 Ga. 697, 698 (*Spence*), the defendant waived his *Miranda* rights and was interrogated about a murder. After the defendant "broke down in tears and asked if he could talk to his girlfriend," the officer said "just you and me," and told the defendant "[t]his is confidential what we're doing right here. Do you understand that? This is confidential…." (*Spence*, at p. 698.) The defendant subsequently gave a statement implicating himself in the murder. (*Ibid.*) The Supreme Court of Georgia held the statement was inadmissible. (*Id.* at pp. 699-700.)

The *Spence* court relied on the rationale of *Hopkins v. Cockrell* (5th Cir. 2003) 325 F.3d 579, 585 (*Hopkins*), in which the federal appeals court held that the police cannot make statements inconsistent with the *Miranda* warnings and then use the confession against the defendant. (*Spence*, *supra*, 281 Ga. at pp. 699-700.) In *Hopkins*, the investigating officer "assured [the defendant] that their conversation was confidential telling [him], 'This is for me and you. This is for me. Okay. This ain't for nobody else.'" (*Hopkins*, at p. 584, fn. omitted.) The Fifth Circuit held these statements "passed the line into the sort of lying that deprives a defendant 'of the knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'" (*Ibid.*, citing *Moran v. Burbine*, *supra*, 475 U.S. at p. 424.)

Nothing comparable to the facts in *Spence* or *Hopkins* is presented in this case or disturbs our conclusion that the trial court properly admitted defendant's statements to Carrillo. These cases essentially hold that when a police officer makes a promise of confidentiality it can nullify the *Miranda* warning if the totality of the circumstances shows that the suspect was led to believe that his or her statement would not go beyond the interrogation room. Here, unlike those cases, the totality of the circumstances does not show defendant was led to believe his statements would remain in the interrogation room. It is apparent from the record that defendant's concern was for the detective not to

9

share defendant's disclosures with family and acquaintances for fear of being labeled a snitch and Carrillo's assurances of confidentiality and protecting his identity as an informant were directed at this concern. There is no indication that defendant believed or was led to believe his statements would stay in the interrogation room. In fact, as the trial court aptly observed, the record indicated the exact opposite:

> "And what I find significant is at the very beginning, as part of what I consider the disclosure by the officer, is he did say 'except the judge and whoever else.' And that's a very important admonition at the very beginning to, in a sense, set the stage of what the definition of 'confidentiality' or 'confidential communication' is all about. Because had he at the very end said this, my view might be different.

> "But at the very beginning, when they're striking up this relationship, if you will, about how he's going to be candid and honest, he says, the exchange, it's similar to *Spence*, but different because it says, 'Herrera'—this is at Page 2—'Nobody's going to know that I said anything.'

> "Carrillo: Okay.

> "And then Mr. Herrera significantly says, 'Except the judge and whoever else.' And based on the transcript, it's Herrera acknowledging that the judge will know, and whoever else. And I have to assume that this transcript is correct because that's a very significant understanding there, that Herrera understands that the judge is going to know and whoever else.

> "And even if that statement is attributable to Carrillo, it's still a disclosure as to what is going to be said and to whom.

> "*So it's Herrera himself saying nobody is going to know what I said except the judge and whoever else. So he's acknowledging that it really goes beyond him and Carrillo at that point.*" (Italics added.)

We find no *Miranda* violation occurred in the case. Rather, the trial court correctly concluded that "under the totality of the circumstances," defendant's confession was voluntary and not "a coerced confession that should be suppressed."

## II. Failure to Instruct on Term "In Association with A Criminal Street Gang"

The jury was instructed on the elements of the criminal street gang enhancement pursuant to CALCRIM No. 1401 as follows:

> "To prove this allegation, the People must prove that: [¶] 1. The defendant committed the crime for the benefit of, at the direction of, *or in association with a criminal street gang*; [¶] AND [¶] 2. The defendant intended to assist, further, or promote criminal conduct by gang members." (Italics added.)

Defendant contends the trial court erred by failing, sua sponte, to provide the jury with a clarifying instruction on the meaning of the term "in association with a criminal street gang." He claims that "[u]nder the holding of the California Supreme Court in the case of *People v. Albillar* (2010) 51 Cal.4th 47, 60-62 [(*Albillar*)], 'in association with a criminal street gang' is a legal term with a specific definition that needed to be provided to the jury." Assuming the issue has not been waived by the failure to object or request a clarifying instruction, we agree with the People that CALCRIM No. 1401 sufficiently instructed the jury on the law and that no further instruction was required absent a request.

"The trial court has a sua sponte duty to give correct instructions on the basic principles of the law applicable to the case that are necessary to the jury's understanding of the case. [Citation.] That duty requires the trial court to instruct on all the elements of the charged offenses and enhancements. [Citation.]" (*People v. Williams* (2009) 170 Cal.App.4th 587, 638-639.) When the terms are used as commonly understood, the court has no obligation to define them absent a request for amplification or explanation.

Citing *Albillar*, *supra*, 51 Cal.4th at pages 60 and 73, defendant asserts that the term "'in association with any criminal street gang' requires a showing that [he] 'relied on ... common gang membership and the apparatus of the gang in committing' the charged crimes." We disagree.

11

In *Albillar*, three fellow gang members were convicted, inter alia, of forcible rape in concert and forcible sexual penetration in concert. In rejecting the defendants' contention that there was insufficient evidence to support the jury's implied finding that the sexual offenses were committed in association with their gang, the Supreme Court pointed out the gang expert's testimony regarding elements of gang membership and reasons for gang members committing crimes. (*Albillar*, *supra*, 51 Cal.4th at pp. 60-61.) Tying in the facts of the case with the expert's testimony, the Supreme Court concluded:

> "Defendants not only actively assisted each other in committing these crimes, but their common gang membership ensured that they could rely on each other's cooperation in committing these crimes and that they would benefit from committing them together. They relied on the gang's internal code to ensure that none of them would cooperate with the police, and on the gang's reputation to ensure that the victim did not contact the police. We therefore find substantial evidence that defendants came together *as gang members* to attack [the victim] and, thus, that they committed these crimes in association with the gang. [Citations.]" (*Id.* at pp. 61-62.)

At this point in the opinion, the California Supreme Court cited, inter alia, *People v. Ochoa* (2009) 179 Cal.App.4th 650, 661, fn. 7 ["the fact ... that the defendant had a fellow gang member in the stolen vehicle with him would support a finding that he acted in association with the gang"); *People v. Morales* (2003) 112 Cal.App.4th 1176, 1179, 1198 (*Morales*) ["it is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang. Here, however, there was no evidence of this. Thus, the jury could reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members"]; and *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1332 (*Martinez*) ["Defendant [an admitted gang member], committed the crimes with ... another admitted member.... [The gang expert] testified this evidence showed defendant committed the robbery in association with the gang. The elements of the gang enhancement may be proven by expert testimony"]. The *Albillar* court did not provide a new definition for the

12

phrase *in association with any criminal street gang*, which must be used in future cases. Rather, as the People aptly observe, our state's highest court simply described how the evidence was sufficient in the case before it to support the true findings on the elements of the criminal street gang enhancement. Accordingly, *Albillar* did not create any duty on the trial courts to define, sua sponte, this term for the jury. Here, absent defense counsel's request for further instruction on the term *in association with a criminal street gang*, the trial court's failure to define the term did not amount to instructional error.

## III.     Sufficiency of the Evidence

Defendant contends insufficient evidence supports the gang enhancements and the substantive offense of active participation in a criminal street gang. For reasons discussed below, we reject defendant's challenge to the sufficiency of the evidence supporting the gang allegations.

### A.     Standard of Review

When the issue is whether the evidence was sufficient to support a verdict, we review the matter under the deferential substantial evidence test. Under this standard, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

### B.     Gang Enhancements

A gang enhancement applies when the defendant committed the underlying felony (1) "for the benefit of, at the direction of, *or* in association with any criminal street gang," and (2) "with the specific intent to promote, further, or assist in any criminal conduct by gang members …." (§ 186.22, subd. (b)(1), italics added.)

13

Defendant challenges the sufficiency of the evidence to support the first element, arguing "there was no substantial evidence to support the finding that the offenses were committed "for the benefit of, at the direction or, or in association with any criminal street gang.'" Defendant complains that Officer McGuire's opinion regarding the gang-benefit of "potentially getting a firearm" was "little more than speculation." However, as in *Morales*, *supra*, 112 Cal.App.4th 1176, 1198, in this case "the jury could reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with [a] fellow gang member[]."

McGuire testified that defendant and Aguiniga were active members of two local Norteño gangs (i.e., VCP and ESVP). Members of the local Norteño gangs had an understanding with one another and it was not uncommon for them to associate with one another or commit crimes together.[5] McGuire explained gang members do not typically commit crimes by themselves. They will bring a fellow gang member for protection and also as witnesses to report to the people who run the gang. Gang members "put in work" to advance their status within their gang by committing crimes. Putting in work could include committing a burglary to obtain firearms which are the most sought-after weapons for the gangs. McGuire testified that the charged offenses were primary activities of the local Norteño gangs. McGuire concluded that the crimes here were committed in association with a criminal street gang. A rational trier of fact could find this element has been established beyond a reasonable doubt. (See *Martinez*, *supra*, 158 Cal.App.4th at p. 1332 [elements of gang enhancement may be proven by expert testimony].) Therefore, the evidence was sufficient to support the first element of the gang enhancement and defendant's contrary claim fails.

---

[5] McGuire also identified a third Norteño gang that was active in Porterville, the West Side Poros or WSP. McGuire testified that during police stops it was not uncommon to find members of all three local Norteño gangs in the same car.

14

In disputing that there was sufficient evidence he acted in association with a criminal street gang, defendant incorporates his previous argument that the element requires a showing "the crimes were committed by the defendants in reliance 'on their common gang membership and the apparatus of the gang.'" Having already rejected this argument once, we need not address it again.

## C.     Active Participation in a Criminal Street Gang

Next, defendant contends the evidence was insufficient to support his conviction of active participation in a criminal street gang. (§ 186.22, subd. (a).) To establish a violation of section 186.22, subdivision (a), the prosecution must prove the following: (1) a person actively participated in a criminal street gang; (2) the members of that gang engaged in or have engaged in a pattern of criminal gang activity; (3) that person knew that the gang members engaged in or have engaged in a pattern of criminal activity; and (4) that person either directly or actively committed or aided and abetted another member of that gang in committing felonious criminal conduct. (§ 186.22, subd. (a).)

Defendant complains the evidence was insufficient only as to the active participation element, arguing "evidence related to gang activity consisted of stale contacts that terminated in 2006, other than the requirement to register as a gang member in 2009," at which time he informed the police he was inactive.

"Active participation is defined as 'involvement with a criminal street gang that is more than nominal or passive.' [Citation.] It does not require that 'a person devot[e] "all ... or a substantial part of his time and efforts" to the gang. [Citation.]' [Citation.]" (*Martinez*, *supra*, 158 Cal.App.4th at p. 1331.) It is well established that the following constitutes sufficient evidence of active participation: expert testimony that the defendant was an active gang member, gang tattoos, self-admission of gang membership, many contacts with a criminal street gang and/or its members, gang-related contacts with police, wearing gang colors, and being in the company of a known gang member while

15

committing the charged offense. (*People v. Williams* (2009) 170 Cal.App.4th 587, 626; *Martinez*, at p. 1331; *People v. Castenada* (2000) 23 Cal.4th 743, 753; *In re Jose P.* (2003) 106 Cal.App.4th 458, 466-468.)

Here, there was substantial evidence defendant actively participated in a gang within the meaning of section 186.22, subdivision (a). McGuire testified that, in his opinion, defendant was an active member of the VCP gang, which was the predominant Norteño gang in Porterville.[6] Defendant committed the charged offenses with Aguiniga, whom defendant personally identified as an active Norteño gang member during his interview with Carrillo, and whom McGuire opined was an active member of the ESVP gang in Porterville. Eyewitness testimony indicated that, at the time of the offenses, defendant was wearing a red shirt or sweatshirt. In his testimony, McGuire explained that Norteño gang members identify with, inter alia, the color red and the number 14. During the booking process following his arrest in the instant case, defendant indicated he was a Norteño gang member. He had a number of gang-related tattoos, including the number "1" on one of his shins, which he showed Carrillo. Defendant also told Carrillo he was planning to get the number "4" tattooed on his other shin. This way someone standing in front of defendant would see a large number "14." From all this evidence, a rational trier of fact could find beyond a reasonable doubt that defendant actively participated in a criminal street gang.

Moreover, "the sufficiency of the evidence showing active participation is not altered by the existence of other evidence offered by defendant to show he was not an active participant in the gang. Resolution of conflicting evidence and credibility issues was for the jury to decide. [Citation.] It is clear from the verdict finding defendant guilty of street terrorism that the jury believed he was actively participating in the gang.

---

**6** McGuire testified that the VCP gang had between 90 to 100 members. The smallest gang in Porterville was WSP, which had 20 to 25 members, and was thus smaller than the VCP and ESVP gangs.

16

Because substantial evidence supports this determination, "'that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citations.]" [Citation.]'") (*Martinez, supra*, 158 Cal.App.4th at p. 1331.)

## IV. *Admissibility of Evidence of Uncharged Offenses*

As part of its showing that defendant had knowledge of the gang's primary activities for purposes of the active gang participation offense, the People introduced, over defendant's Evidence Code section 352 objection, evidence regarding two incidents which led to defendant's prior juvenile adjudications for robbery and assault with a deadly weapon. Defendant contends the trial court abused its discretion and violated his federal due process rights in admitting the evidence. We disagree.

### A. *Background*

McGuire testified that on January 3, 2006, defendant and two other Norteño gang members—Michael Lujan and Rebecca Valdivinos—were involved in a carjacking, which is one of the primary activities of the gang. The responding police officer reported that the two victims first encountered defendant and his companions inside a pool hall. Later, when the victims were preparing to leave, defendant and Lujan approached, pulled out firearms, and demanded the victims exit their vehicle. Defendant and his two companions next entered the vehicle with the victims. Defendant sat behind the driver and pressed the muzzle of his firearm to the back of the driver's head while giving directions on where to drive and threatening to kill or harm the victims if they failed to comply. As they were driving towards the east, unincorporated area of Porterville, defendant began to choke the driver.[7] As a result of the incident, defendant was arrested and convicted of robbery, one of the primary activities of the gang.

---

[7] At this point in McGuire's testimony, defense counsel raised an Evidence Code section 352 objection and moved for a mistrial. The trial court denied the motion for a mistrial but directed the prosecutor "to just focus on the essential elements that establish the crime, type of the crime that gangs commit, he was there, and he was an active participant."

17

On December 30, 2006, defendant was involved in an assault on an individual where gang slurs "east side" and "poros" were yelled out. As a result of the incident, defendant was arrested and convicted of assault with a deadly weapon, one of the gang's primary activities. The conviction included a gang enhancement.

### B. Evidence Code Section 352

"Evidence Code section 352 requires the exclusion of evidence only when its probative value is *substantially* outweighed by its prejudicial effect. 'Evidence is substantially more prejudicial than probative [citation] [only] if, broadly stated, it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome" [citation].' [Citation.]" (*People v. Tran* (2011) 51 Cal.4th 1040, 1047 (*Tran*).) We review a trial court's ruling under this statute for abuse of discretion. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1005.)

In arguing that the trial court abused its discretion, defendant asserts that "the court acknowledged the prejudice of the prior crimes history, in ruling to bifurcate the priors" and that the court's "[a]dmission of the priors on the issue of knowledge, relevant only to a weak substantive gang crime, resulted in prejudice from excessive gang evidence that had little purpose other than to disparage [defendant's] character." We find defendant's assertions unconvincing and conclude the trial court did not abuse its discretion in admitting evidence of defendant's uncharged offenses.

"[B]ecause the prosecution is required to establish the defendant was an active participant in a criminal street gang and had knowledge of the gang's criminal activities, the jury inevitably and necessarily will in any event receive evidence tending to show the defendant actively supported the street gang's criminal activities. That the defendant was personally involved in some of those activities typically will not so increase the prejudicial nature of the evidence as to unfairly bias the jury against the defendant." (*Tran*, *supra*, 51 Cal.4th at p. 1048.) In *Tran*, the Supreme Court concluded that the trial

18

court did not abuse its discretion in admitting evidence that the defendant had committed a separate, gang-related offense on a previous occasion, to establish a predicate offense to establish a "pattern of criminal gang activity" under section 186.22, subdivision (b). (*Tran*, at pp. 1046, 1050.) The evidence was "highly probative" that the defendant actively participated in the gang and knew the gang engaged in a pattern of criminal activity. (*Id.* at p. 1050.) The prior conviction had taken place several years before the defendant's arrest on the current charges, enhancing its probative value "because the evidence emanated from independent sources that could not have been influenced by knowledge of the charged offenses." (*Ibid.*)

Similarly, here, the evidence of defendant's prior gang-related offenses was probative of defendant's active involvement in the gang's criminal activities, and tended to show that he knew other gang members "engaged in a pattern of criminal gang activity." (§ 186.22, subd. (a).) The offenses occurred in 2006, several years before defendant's arrest on the current charges. The details of the prior offenses of assault and robbery were "less inflammatory" than the testimony regarding defendant's participation in the charged offenses arising out of the violent home-invasion robbery in July 2010. (*Tran*, *supra*, 51 Cal.4th at p. 1050.)

We also reject defendant's brief assertion that the evidence of his prior offenses was "cumulative." The Supreme Court rejected a similar assertion, explaining:

> "Defendant argues that evidence of a defendant's separate offense on another occasion should not be admitted when it is 'cumulative.' By this he seems to mean that the evidence should not be admitted when the prosecution has the ability to develop evidence of offenses committed on separate occasions by other gang members. But defendant cites no authority for the argument that the prosecution must forgo the use of relevant, persuasive evidence to prove an element of a crime because the element might also be established through other evidence. The prejudicial effect of evidence defendant committed a separate offense may, of course, outweigh its probative value if it is merely cumulative regarding an issue not reasonably subject to dispute. [Citations.] But the prosecution cannot

be compelled to '"present its case in the sanitized fashion suggested by the defense."' [Citation.] When the evidence has probative value, and the potential for prejudice resulting from its admission is within tolerable limits, it is not *unduly* prejudicial and its admission is not an abuse of discretion." (*Tran*, *supra*, 51 Cal.4th at pp. 1048-1049.)

In this case, the probative value of the evidence of defendant's prior gang-related offenses outweighed its prejudicial effect, and the trial court did not abuse its discretion admitting the evidence.

### C. Due Process

We also disagree with defendant's contention that the challenged evidence was "so inflammatory" that it violated his due process rights "because it created an undue risk that the jury would render a decision based on unfair prejudice, rather than on proof beyond a reasonable doubt that [defendant] was guilty of the crimes he was charged with committing."

"To prove a deprivation of federal due process rights, [defendant] must satisfy a high constitutional standard to show that the erroneous admission of evidence resulted in an unfair trial. 'Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must "be of such quality as necessarily prevents a fair trial." [Citations.] Only under such circumstances can it be inferred that the jury must have used the evidence for an improper purpose.' [Citation.] 'The dispositive issue is … whether the trial court committed an error which rendered the trial "so 'arbitrary and fundamentally unfair' that it violated federal due process." [Citation.]' [Citation.]" (*People v. Albarran* (2007) 149 Cal.App.4th 214, 229-230 (*Albarran*).)

In *Albarran, supra,* two Hispanic males shot guns at a house. Though there was substantial evidence that the sole defendant was a gang member, there was no evidence as to the identity of the other individual. (149 Cal.App.4th, at pp. 217-219.) Prior to trial, the court ruled that the proffered gang evidence was relevant not only to the gang

20

enhancement but also to the issues of motive and intent for the underlying charges. (*Id.* at p. 220.) The jury found the defendant guilty of the charged offenses and found the gang enhancement allegations true. (*Id.* at p. 222.) However, the trial court later found that there was insufficient evidence to support the gang findings and they were dismissed without prejudice. (*Ibid.*) *Albarran* held that, even if some of the gang evidence was relevant to the issues of motive and intent, other inflammatory gang evidence was admitted that was not relevant to the charged offenses. (*Id.* at pp. 227-228.) *Albarran* stated:

> "Certain gang evidence, namely the facts concerning the threat to police officers, the Mexican Mafia evidence and evidence identifying other gang members and their unrelated crimes, had no legitimate purpose in this trial.... From this evidence there was a real danger that the jury would improperly infer that whether or not [the defendant] was involved in these shootings, he had committed other crimes, would commit crimes in the future, and posed a danger to the police and society in general and thus he should be punished." (*Id.* at p. 230.)

Accordingly, *Albarran* concluded that the case was "one of those *rare and unusual* occasions where the admission of evidence ... violated federal due process and rendered the defendant's trial fundamentally unfair." (*Id.* at p. 232, italics added.)

We agree with the People that this is not one of those *rare and unusual* cases. After citing to *Albarran*, defendant asserts "the prosecution presented meager evidence that the offenses were gang related" and suggests the challenged evidence was introduced only for the improper purpose of showing his criminal disposition or bad character. We disagree with defendant's assertion. For reasons already discussed, the evidence supporting the gang allegations in this case was substantial, not meager. Evidence of defendant's prior offenses was directly relevant and highly probative with respect to proving an element of the substantive gang offense and not unduly prejudicial. Defendant has failed to demonstrate that the admission of the evidence rendered his trial fundamentally unfair and therefore we reject his due process claim.

21

## V. *Failure to Prove Juvenile Adjudication Constituted a Strike*

A prior juvenile adjudication will constitute a strike only if certain requirements are met, two of which are relevant in the instant case. First, under section 1170.12, subdivision (b)(3), in the prior juvenile proceeding giving rise to the adjudication alleged as a strike, the juvenile must have been adjudged a ward of the court because of an offense listed in Welfare and Institutions Code section 707, subdivision (b).[8] (*People* v. *Garcia* (1999) 21 Cal.4th 1, 6.) Second, the juvenile adjudication in question must be an offense defined as "serious" under section 1192.7, subdivision (c) or "violent" under section 667.5, subdivision (c). (*People v. Leung* (1999) 71 Cal.App.4th 1, 15.)

The first of these requirements is met because the challenged offense alleged to be a strike, assault by means of force likely to cause great bodily injury, is listed in section 707(b). (Welf. & Inst. Code, § 707, subd. (b)(14).) Defendant's argument is essentially based on the second requirement. Noting that assault by means of force likely to cause great bodily injury constitutes a serious felony only if the defendant *personally* inflicted great bodily injury (§ 1192.7, subd. (c)(8)) or *personally* used a dangerous weapon (§ 1192.7, subd. (c)(23), defendant asserts the prosecution failed to prove either because "the only evidence offered to prove this prior was a plea to the charged assault likely to cause great bodily injury." The People do not dispute the lack of evidence in this regard but argue defendant's 2007 assault adjudication nonetheless qualifies as a serious felony under subdivision (c)(28) of section 1192.7 (hereafter § 1192.7(c)(28)) because the plea evidence also shows defendant admitted the accompanying gang enhancement allegation. We agree with the People.

Section 1192.7(c)(28), added to section 1192.7 by the voters of California when they approved Proposition 21 ("The Gang Violence and Juvenile Crime Prevention Act"),

---

[8] We sometimes refer to Welfare and Institutions Code section 707, subdivision (b) as section 707(b).

22

includes in the statutory list of serious felony offenses "any felony offense, which would also constitute a violation of Section 186.22." Thus, an offense must meet two requirements to qualify as a serious felony under section 1192.7(c)(28); it must be (1) a "felony offense," and (2) it must "also constitute a felony violation of section 186.22." (§ 1192.7(c)(28).) Defendant's 2007 adjudication meets both these requirements. Assault by means of force likely to cause great bodily injury is a felony under section 245, subdivision (a)(1), and because defendant admitted the accompanying section 186.22, subdivision (b)(1) enhancement, that offense "also constitute[s] a felony violation of Section 186.22." (§ 1192.7(c)(28).)

Defendant takes issue with this conclusion on the ground that the People did not raise the "theory" below that his prior adjudication qualified as a strike under section 1192.7(c)(28). We disagree with defendant's characterization of the People's argument as raising a new *theory*. Proving that defendant's prior assault offense qualified either as a "serious" felony under section 1192.7, subdivision (c) or "violent" felony under section 667.5, subdivision (c) was a *requirement*, not a theory. The information specifically alleged that defendant's prior conviction for assault was "w/PC182.22(b)" and the allegation was supported by evidence the People presented at the bifurcated court trial on the prior strike allegations. In finding the strike allegations true, the court specifically noted that defendant's violation of section 245, subdivision (a)(1) "was with a 186.22(b)."

## VI. *Use of Defendant's Juvenile Adjudications as Strikes*

Defendant argues that the use of his juvenile adjudications as the basis for the prior strike allegations violated his constitutional right to a jury trial. As defendant acknowledges, however, our Supreme Court has rejected this argument in *People v. Nguyen* (2009) 46 Cal.4th 1007, 1014, 1025. Since our Supreme Court's decision is

23

binding on this court (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), we must reject defendant's argument.

### VII.	*Failure to Impose the Five-year Prior Serious Felony Conviction Enhancements*

In our original opinion, we erroneously agreed with the People's argument (then undisputed by defendant) that the trial court erred in failing to impose the mandatory five-year enhancements alleged under section 667, subdivision (a)(1) for defendant's prior serious felonies.  The argument overlooked the significance of the fact the underlying felonies were juvenile adjudications.  "[A]lthough the Legislature (and the electorate) elected to treat certain juvenile adjudications as prior felonies for purposes of the Three Strikes law, juvenile adjudications cannot be considered … a prior serious felony conviction for purposes of the mandatory five-year enhancement in section 667, subdivision (a).  [Citation.]" (*Smith*, *supra*, 110 Cal.App.4th at p. 1080, fn. 10, citing *West*, *supra*, 154 Cal.App.3d at pp. 107-108.)  Accordingly, the trial court did not err in failing to impose the enhancements under section 667, subdivision (a)(1) in this case.  We therefore vacate our original opinion, which directed the trial court to impose the prior serious felony conviction enhancements, and issue the current opinion which affirms the judgment in its entirety.

## *DISPOSITION*

The judgment is affirmed.

                                                _____

                                                      HILL, P. J.

WE CONCUR:

_____

POOCHIGIAN, J.

_____

PEÑA, J.