## S07F1201. WILSON v. WILSON.

(653 SE2d 702)

SEARS, Chief Justice.

The appellant, Jonathan Wilson, appeals from a final judgment of the trial court that incorporated a mediated settlement agreement reached by Mr. Wilson and the appellee, Twyla Wilson.[1] On appeal, Mr. Wilson contends that the trial court erred in ruling that the agreement was enforceable and erred in awarding attorney fees to Ms. Wilson. We conclude that the trial court did not err in enforcing the settlement agreement but did err in awarding attorney fees to Ms. Wilson. Accordingly, we affirm the trial court's judgment in part and reverse it in part.

1. On April 14, 2006, Ms. Wilson filed this divorce action against Mr. Wilson. At that time, the Coweta Judicial Circuit had adopted the Coweta Judicial Circuit Alternative Dispute Resolution Program ("Coweta ADR Program"),[2] and had elected for the program to be governed by certain rules, including the Model Court Mediation Rules enacted by the Georgia Commission on Dispute Resolution.[3] As part of its alternative dispute resolution program, the Coweta Judicial Circuit had adopted a standing order requiring all contested divorce cases to participate in mediation.

---

[1] This Court granted Mr. Wilson's discretionary application under the pilot project for domestic relations cases. See *Wright v. Wright*, 277 Ga. 133 (587 SE2d 600) (2003).

[2] See Rule IV of the Alternative Dispute Resolution Rules adopted by this Court, which encourages every court in Georgia to adopt programs for alternative dispute resolution.

[3] See Rule II of the Alternative Dispute Resolution Rules, which creates the Georgia Commission on Dispute Resolution and charges it with creating guidelines for court-referred programs.

On September 18, 2006, Mr. Wilson's attorney filled out a form to initiate mediation with the Coweta ADR Program. On October 4, 2006, the Program Director for the Mediation Center of the Coweta ADR Program issued a letter to the parties and their attorneys stating that that office was unable to schedule the case for mediation due to a request by the attorneys not to schedule the case for mediation "pending further discovery." The letter also stated that the case was being placed on inactive status until the attorneys notified the mediation center of a date and time to schedule mediation.

On December 22, 2006, without informing the mediation center of their action, the parties met with a mediator of their choosing, and agreed to do so without their attorneys, neither of whom were available on that date. Moreover, the mediator the parties chose was not on the mediation center's referral list. The mediator had the parties sign an "Agreement to Mediate," which provided that, if the parties reached an agreement during mediation, the mediator would prepare a "Memorandum of Understanding" and that "[e]ach party is advised to review this [Memorandum of Understanding] with his/her attorney before the agreement is placed in final form and signed."

As a result of the mediation, the parties signed a settlement agreement on December 22. In it, the parties acknowledged that they had reached the agreement without the presence of their attorneys at the mediation, that they "had adequate time to consult with their respective attorneys before freely and voluntarily executing this agreement," and that the agreement would be submitted to the court for incorporation into a final decree of divorce.

On December 27, 2006, Mr. Wilson's attorney sent a letter to Ms. Wilson's attorney, stating that Mr. Wilson had contacted her after the mediated settlement agreement was entered and that, although she (the attorney) had not seen the agreement, Mr. Wilson had decided that he could not comply with its terms. The letter stated that the agreement therefore was "set aside."

On December 29, 2006, Ms. Wilson filed a motion to enforce the settlement agreement. In response, Mr. Wilson contended the agreement was not enforceable. More specifically, he contended that the parties had engaged in a "court-referred" or "court-annexed" mediation governed by the Model Court Mediation Rules; that, under Rule 12 (d) (2) of those rules, he had three calendar days in which to object to the mediated agreement since his attorney was not present at the mediation; and that he had properly objected by filing the objection with Ms. Wilson's attorney. He also contended that he was not competent to enter the agreement because he suffers from depression, was bothered by his medication, was exhausted, and lacked the mental and physical stamina to understand the obligations he was undertaking.

In support of her motion to enforce, Ms. Wilson contended that the parties had not engaged in a court-referred mediation and that their mediation thus was not subject to rules adopted by the Coweta ADR Program.

On January 24, 2007, the trial court held a hearing on Ms. Wilson's motion to enforce the settlement agreement, and on January 29, the trial court entered an order enforcing it. The trial court ruled that the mediation was a " 'private mediation' in that it was not court-annexed or court-referred and was not subject to the ADR Rules adopted by the Coweta Mediation Center which would entitle [Mr. Wilson] to reject the agreement if an objection was filed within three days of the execution of the agreement." The court also ruled that Mr. Wilson had the mental capacity to enter into the agreement. On February 23, 2007, the trial court entered a final judgment of divorce that incorporated the mediated settlement agreement.

2. Mr. Wilson first contends that the trial court erred in ruling that the mediated agreement was not a "court-referred" or "court-annexed" mediation. For the reasons that follow, we agree.

Although the relevant mediation rules do not define what is a court-referred mediation, the superior courts of the Coweta Judicial Circuit have adopted a standing order providing that, in contested divorce cases, the "parties shall be referred to mediation," and, in this case, the mediation center referred the case to mediation on September 18, 2006. Moreover, the parties' selection of a mediator who was not on the Coweta Judicial Circuit's approved list of mediators is consistent with Rule 4 (a) (3) of the Model Court Mediation Rules, which permits the parties to a court-referred mediation to select their own mediator (instead of being assigned one approved by the local program) so long as he or she is registered with the Georgia Office of Dispute Resolution. The parties' mediator in this case was registered with the Office of Dispute Resolution. In addition, Rule 9.1 of the Uniform Rules for Dispute Resolution Programs, adopted by this Court as Appendix A of our Alternative Dispute Resolution Rules, provides that "when the parties have been referred to an ADR process by the court, the court is responsible for the integrity of the process." Finally, Rule 3.1 of those same rules provides that, once a case is referred to mediation by a court, a party "may petition the court to have the case removed from mediation." Here, the parties did not petition the court to remove the case from mediation.

Considering the foregoing, it is clear that the parties' divorce case was referred to mediation by the trial court, and that the mediation was conducted by a mediator competent to conduct the mediation under the applicable rules. Moreover, because the trial court is charged with overseeing the integrity of a mediation once it is initiated, and because parties to a mediation are given a method by

which they can opt out of a court-referred mediation and the parties in this case did not avail themselves of that option, we conclude that the parties' mediation was a "court-referred" mediation even though the parties, among other things, did not participate in certain of the processes of the local program and did not fulfill their responsibilities to communicate with the program director.

3. However, even though Mr. Wilson was entitled to the benefit of Rule 12 (d) (2) of the Model Court Mediation Rules, we conclude that he did not comply with them.

Under Rule 12 (d) (2) of the Model Court Mediation Rules, Mr. Wilson had three calendar days in which to object to the mediation agreement. Rule 12 (d) (2) provides that, if there is no objection within three calendar days, "the program coordinator will file the agreement with the court." Because the program coordinator is directed to file the agreement with the court if no timely objection is filed, it is clear that the objection, if one is filed, must be filed with the program coordinator. Mr. Wilson contends that he substantially complied with the rule by filing his objection with Ms. Wilson's attorney. We disagree. For the program coordinator to perform his or her job of communicating with the parties, the mediator, and the court regarding the progress of the mediation,[4] any objections to a mediated agreement must be filed with the program coordinator. Thus, we conclude that Mr. Wilson did not comply with Rule 12 (d) (2) in filing his objection with opposing counsel.

4. Mr. Wilson also contends that the mediator exceeded his proper role as a mediator by drafting the settlement agreement in question. This contention, however, is without merit, as a role of the mediator is to draft any agreement that the parties reached during mediation.[5]

5. Mr. Wilson contends that the trial court's decision to call the mediator to testify at the hearing on the enforceability of the settlement agreement constituted error, as it violated the confidentiality portion of the mediation agreement signed by the parties and the mediator.[6] We find no reversible error.

In the present case, Mr. Wilson testified at the hearing on the motion to enforce the settlement agreement that he suffered from depression and was depressed on the day of the mediation; that the

---

[4] See Rules 11 and 12 of the Model Court Mediation Rules.

[5] See Rule 12 (d) of the Model Court Mediation Rules (if the parties reach an agreement during mediation, the mediator has the "responsibility to draw the agreement unless the parties determine otherwise.").

[6] The mediation agreement provided that, among other things, "all written and oral communications, negotiations and statements made in the course of mediation will be treated as privileged . . . and are absolutely confidential."

mediator told him that he would be foolish to go to trial; that he was upset and cried during the mediation process; and that he does not remember signing the settlement agreement and was not aware that the settlement agreement was a legally binding document. Mr. Wilson's psychiatrist also testified, stating that Mr. Wilson suffered from bipolar disorder and took several medications to treat it.

The mediator did not testify as to substantive settlement discussions or any specific confidential communications but only testified, in relevant part, about his status as a private mediator and about his general impression that both of the parties had the mental capacity to engage in the mediation and settlement. The mediator added that Mr. and Ms. Wilson were in the same room for only a short, initial discussion and that, during the nine hours of mediation, they were in separate rooms.

Some courts have held that, when a party to a mediated agreement contends in a court of law that the agreement is unenforceable, the party waives any privilege of confidentiality.[7] This case law is consistent with Section 6 (b) (2) of the Uniform Mediation Act (2001), which provides that, when a party contends that a mediated settlement agreement is unenforceable, the mediator may testify regarding relevant mediation communications if a court determines that "the party seeking discovery or the proponent of the evidence has shown that the evidence is not otherwise available, [and] that there is a need for the evidence that substantially outweighs the interest in protecting confidentiality." Although neither this Court nor the Georgia Commission on Dispute Resolution has adopted this exception to the confidentiality of a court-referred mediation,[8] we conclude that fairness to the opposing party and the integrity of the mediation process dictate that we create such an exception when a party contends in court that he or she was not competent to enter a signed settlement agreement that resulted from the mediation. In this regard, a blanket rule prohibiting a mediator from being able to testify in such cases

> might well deprive the court of the evidence it needs to rule reliably on the plaintiff's contentions — and thus might either cause the court to impose an unjust outcome on the plaintiff or disable the court from enforcing the settlement. In this setting, refusing to compel testimony from the mediator might end up being tantamount to denying the motion

---

[7] See *Kalof v. Kalof*, 840 So2d 365, 367 (Fla. Dist. Ct. App. 2003).

[8] See Rule VII (A), (B) of the Alternative Dispute Resolution Rules; Rule 7 (a), (b) of the Model Court Mediation Rules.

to enforce the agreement — because a crucial source of evidence about the plaintiff's condition and capacities would be missing. Following that course ... would do considerable harm not only to the court's mediation program but also to fundamental fairness. If parties believed that courts routinely would refuse to compel mediators to testify, and that the absence of evidence from mediators would enhance the viability of a contention that apparent consent to a settlement contract was not legally viable, cynical parties would be encouraged either to try to escape commitments they made during mediations or to use threats of such escapes to try to re-negotiate, after the mediation, more favorable terms — terms that they never would have been able to secure without this artificial and unfair leverage.[9]

Although the trial court in the present case did not make specific findings on the factors set forth in Section 6 (b) (2) of the Uniform Mediation Act, we conclude that the record is of sufficient detail for this Court to conduct the analysis.[10] It is clear that the only witness to all but about 15 minutes of Mr. Wilson's conduct during the mediation was the mediator, and thus there was no other witness available to offer evidence of Mr. Wilson's mental and emotional condition during the nine hours of mediation. Moreover, the mediator did not testify about specific confidential statements that Mr. Wilson made during the mediation, but only testified about his general impression of Mr. Wilson's mental and emotional condition,[11] thus diminishing the potential harm to the values underlying the privilege of confidentiality in mediations. Finally, if the mediator here could not testify regarding his general impressions of Mr. Wilson's mental and emotional condition, it would be extraordinarily difficult for the trial court to reach a reasoned and just resolution of Mr. Wilson's contention that the agreement is unenforceable, thus undermining the efforts of the parties and the mediator in conducting the mediation and causing a potentially unjust result to Ms. Wilson. Although we conclude in this case that the trial court did not err in calling the mediator to testify, we acknowledge the significance of the confidentiality of the mediation process and the strong policy considerations

---

[9] *Olam v. Congress Mtg. Co.*, 68 FSupp.2d 1110, 1137 (N.D. Cal. 1999).

[10] See *Spence v. State*, 281 Ga. 697, 700, n. 11 (642 SE2d 856) (2007).

[11] We assume, without deciding, that this type of mental impression is confidential. See Section 2 (2) of the Uniform Mediation Act, Comments (mental impressions reached based on communications made during the mediation should be confidential).

that support it, and we thus urge trial courts to exercise caution in calling mediators to testify.[12]

6. Mr. Wilson contends that the trial court erred in enforcing the settlement agreement as he was unemployed at the time of the mediation agreement and did not have the means to pay for his child's college education or to pay $1,000 per month in child support. However, we conclude that the trial court, after finding that Mr. Wilson had been paying $1,000 per month in temporary support and had a net worth of approximately $2,000,000, did not abuse its discretion in enforcing the agreement.[13]

7. Mr. Wilson contends that the trial court erred in failing to give him a jury trial on the issue of his competency to enter the settlement agreement. However, because Mr. Wilson participated in two hearings on the issue without asserting his right to a jury trial[14] and did not object to proceeding without a jury until appeal, he has waived his right to a jury trial on the issue.[15]

8. Mr. Wilson contends that the trial court erred in awarding Ms. Wilson the attorney fees she incurred in enforcing the settlement agreement and in awarding witness fees to the mediator. We conclude that the issue of attorney and witness fees must be remanded to the trial court. When a "trial court fail[s] to make findings sufficient to support such an award under either [OCGA § 19-6-2 or § 9-15-14], the issue of attorney fees must be remanded for an explanation of the statutory basis for the award and any findings necessary to support it."[16] In the present case, the trial court failed to make sufficient findings to support the award of attorney and witness fees, and we thus reverse the present award of attorney and witness fees and remand the case to the trial court for it to explain the "statutory basis for the award and any findings necessary to support it."[17]

---

[12] Moreover, before a trial court permits a mediator to testify, the better practice would be for a court to conduct a hearing in camera in order to address the need to call a mediator as a witness. See Section 6 (b) (2) of the Uniform Mediation Act. We note also that the record does not show that the mediator in this case objected to testifying. See Rule 7 (a) of the Model Court Mediation Rules (a mediator may not be required to testify concerning a mediation in a subsequent judicial proceeding).

[13] See *Gravley v. Gravley*, 278 Ga. 897, 898-899 (608 SE2d 225) (2005) ("[w]hen incorporating a settlement agreement into a final judgment of divorce, thereby making the settlement agreement the judgment of the court, the trial court has the discretion to approve or reject the settlement, in whole or in part.").

[14] We assume, without deciding, that Mr. Wilson had a right to a jury trial on the issue of his competency as it related to the enforcement of the settlement agreement.

[15] *Holloman v. Holloman*, 228 Ga. 246, 247 (184 SE2d 653) (1971).

[16] *Cason v. Cason*, 281 Ga. 296, 300 (637 SE2d 716) (2006). Accord *Moon v. Moon*, 277 Ga. 375, 378-379 (589 SE2d 76) (2003).

[17] *Cason*, 281 Ga. at 300.

*Judgment affirmed in part, reversed in part, and case remanded with direction. All the Justices concur.*

DECIDED NOVEMBER 21, 2007.

*Delia T. Crouch*, for appellant.
*Wood, Odom & Edge, Gus L. Wood III*, for appellee.