**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 30, 2025**

# In the Court of Appeals of Georgia

A25A0196. SHAHID v. ESAAM.

WATKINS, Judge.

After the trial court entered a final judgment and decree of divorce, Nimat Shahid ("Wife") filed a petition to reopen the case and set aside the final judgment, arguing that service by publication was improper. The trial court denied the motion, using an order that relied upon non-existent case law. For the reasons discussed below, we vacate the order and remand for the trial court to hold a new hearing on Wife's petition. We also levy a frivolous motion penalty against Diana Lynch, the attorney for Appellee Sufyan Esaam ("Husband").

According to Wife's October 2023 verified petition to reopen case, Husband filed a complaint for divorce in April 2022, service was performed by publication, and

the trial court entered a final judgment in July 2022. In the petition, Wife averred that she had moved to Texas after she and Husband separated in July 2021 and that Husband failed to use reasonable diligence to determine her whereabouts before obtaining service by publication of his divorce complaint. Following a hearing, the superior court denied Wife's motion. We granted Wife's application for discretionary review, and this appeal followed.

1. Citing *Reynolds v. Reynolds*,[1] Wife argues that the superior court erred when it denied her petition to reopen the case and set aside the divorce decree because Husband did not make a sufficient showing of due diligence to allow service by publication under OCGA § 9-11-4 (f). Wife points out in her brief that the trial court relied on two fictitious cases in its order denying her petition, and she argues that the order is therefore, "void on its face."

In his Appellee's Brief, Husband does not respond to Wife's assertion that the trial court's order relied on bogus case law. Husband's attorney, Diana Lynch, relies on four cases in this division, two of which appear to be fictitious, possibly

---

[1] 296 Ga. 461 (769 SE2d 511) (2015).

"hallucinations" made up by generative-artificial intelligence ("AI"),[2] and the other two have nothing to do with the proposition stated in the Brief.[3]

Undeterred by Wife's argument that the order (which appears to have been prepared by Husband's attorney, Diana Lynch) is "void on its face" because it relies on two non-existent cases, Husband cites to 11 additional cites in response that are either hallucinated or have nothing to do with the propositions for which they are cited. Appellee's Brief further adds insult to injury by requesting "Attorney's Fees on Appeal" and supports this "request"[4] with one of the new hallucinated cases.

We are troubled by the citation of bogus cases in the trial court's order. As the reviewing court, we make no findings of fact as to how this impropriety occurred,

---

[2] "AI hallucination is a phenomenon wherein a large language model (LLM)—often a generative AI chatbot or computer vision tool — perceives patterns or objects that are nonexistent or imperceptible to human observers, creating outputs that are nonsensical or altogether inaccurate." *Harris v. Adams*, 757 FSupp3d 111, 119 n.3 (D. Mass. 2024) (citing *What Are AI Hallucinations?*, IBM, https://www.ibm.com/think/topics/ai-hallucinations (last visited June 25, 2025)).

[3] See Appendix, infra, listing the 11 (out of 15) case citations contained in Appellee's Brief that fall into one of these two categories.

[4] The inclusion of this "request" in the body of the brief violates our rule that "[a]ll motions shall be filed as separate documents[.] No motions . . . shall be filed in the body of briefs[.]" Court of Appeals Rule 41 (b).

observing only that the order purports to have been prepared by Husband's attorney, Diana Lynch. We further note that Lynch had cited the two fictitious cases that made it into the trial court's order in Husband's response to the petition to reopen, and she cited additional fake cases both in that Response and in the Appellee's Brief filed in this Court.

As noted above, the irregularities in these filings suggest that they were drafted using generative AI. In his 2023 Year-End Report on the Federal Judiciary, Chief Justice John Roberts warned that "any use of AI requires caution and humility."[5] Roberts specifically noted that commonly used AI applications can be prone to "hallucinations," which caused lawyers using those programs to submit briefs with cites to non-existent cases.[6]

Although the present case may be the first occasion for a Georgia appellate court to confront the problems that can flow from a lawyer's apparent adoption of generative-AI, other courts have commented on the issue. In a 2023 opinion, a federal

---

[5] Chief Justice John G. Roberts, Jr., U. S. Sup. Ct., 2023 Year-End Report on the Federal Judiciary 5 (2023), PDF available at: https://www.supremecourt.gov/publicinfo/year-end/year-endreports.aspx.

[6] Id. at 5-6.

4

district court noted in *Mata v. Avianca, Inc.*, that "there is nothing inherently improper about using a reliable artificial intelligence tool for assistance. But existing rules impose a gatekeeping role on attorneys to ensure the accuracy of their filings."[7] In that case, the attorneys had abandoned their responsibilities when they submitted non-existent judicial opinions with fake quotes and citations created by the AI tool ChatGPT, then continued to stand by the fake opinions after judicial orders called their existence into question.[8]

Indeed,

[m]any harms flow from the submission of fake opinions. The opposing party wastes time and money in exposing the deception. The Court's time is taken from other important endeavors. The client may be deprived of arguments based on authentic judicial precedents. There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant

---

[7] 678 FSupp3d 443, 448 (SDNY 2023).

[8] Id.

may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity.[9]

Here, as in *Mata*, Lynch's use of fictitious cases and citations has deprived the opposing party of the opportunity to appropriately respond to her arguments.

As to Lynch's request for attorney fees "for the costs incurred in responding to this appeal[,]" that section of Appellee's Brief provides:

> 1. OCGA § 9-15-14: This statute authorizes the recovery of attorney's fees if the court finds that an action, including an appeal, lacked substantial justification or was filed to delay or harass.
> 2. Johnson v. Johnson, 285 Ga. 408 (2009): The court awarded attorney's fees to the prevailing party in a divorce appeal, finding that the appeal was without merit and amounted to frivolous litigation.

We cannot find the cited case, *Johnson v. Johnson*, either by case name or citation. And, not surprisingly, we could not locate the case by its purported holding, which is a blatant misstatement of the law. More than 30 years ago, this Court held that "OCGA § 9-15-14 does not authorize the imposition of attorney fees and

---

[9] (Footnote omitted.) *Mata*, 678 FSupp3d at 448-449; accord Matthew R. Caton, Features: Lawyers: Rely on "Generative AI" at Your Peril, 39 Maine Bar. J. 48 (2024).

expenses of litigation for proceedings before an appellate court of this state."[10] Since then, our Supreme Court has consistently and clearly reiterated this point multiple times: "attorney's fees incurred in connection with appellate proceedings are not recoverable under OCGA § 9-15-14."[11]

Moreover, it is worth pointing out that we granted Wife's application for discretionary review (Case Number A25D0396) which "established as a matter of fact and law that her appeal is not frivolous."[12] "As used in [OCGA § 9-15-14], 'lacked

[10] *Dept. of Transp. v. Franco's Pizza & Delicatessen*, 200 Ga. App. 723, 728 (5) (409 SE2d 281) (1991), overruled on other grounds, *White v. Fulton County*, 264 Ga. 393, 394 (1) (444 SE2d 734) (1994); see also *Dismer v. Luke*, 228 Ga. App. 638, 640 (2) (492 SE2d 562) (1997) ("OCGA § 9-15-14 merely makes substantive and procedural provision for a *trial court*, *sitting as the trior of fact*, to make an award of attorney's fees and expenses of litigation as a sanction against certain enumerated abuses.") (citations and punctuation omitted; emphasis supplied).

[11] *McGahee v. Rogers*, 280 Ga. 750, 754 (2) (632 SE2d 657) (2006); accord *Rollins v. Rollins*, 300 Ga. 485, 489 (2) (796 SE2d 721) (2017) (directing that, on remand, "when the trial court considers anew the question of attorney fees under OCGA § 9-15-14, it should not award [Husband] any attorney fees incurred in connection with proceedings in [the appellate court] (whether in this appeal or previous appeals), as such attorney fees are not recoverable under OCGA § 9-15-14[ ]"); *Kautter v. Kautter*, 286 Ga. 16, 19 (4) (c) (685 SE2d 266) (2009) ("Attorney fees incurred in connection with appellate proceedings are not recoverable under OCGA § 9-15-14[.]").

[12] *Farmer v. State*, 216 Ga. App. 515, 521 (5) (c) (455 SE2d 297) (1995) (reversing supersedeas bond); see also *Long v. Truex*, 349 Ga. App. 875, 881 (3) (827

substantial justification' means substantially frivolous, substantially groundless, or substantially vexatious." OCGA § 9-15-14 (b). Thus, even if OCGA § 9-15-14 were an appropriate avenue to recover attorney fees for the costs of defending a frivolous appeal, our grant of Wife's application should have prompted Husband to reconsider his approach before filing the Appellee's Brief.

Under the circumstances and given the indisputably clear state of the law, Husband's attorney, Diana Lynch, cannot reasonably have believed, as the Appellee's Brief "requests," that this Court would "award attorney fees under OCGA § 9-15-14 for the costs incurred in responding to this appeal." Further, Lynch provided no other basis for an award of "attorney's fees to the prevailing party in a divorce appeal," other than a fictitious case, which purported to be a 2009 case from the Supreme Court of Georgia.

To be clear, we make no factual finding as to who (or what) inserted the fictitious cases into the superior court's order.[13] We are deeply troubled, however, that

---

SE2d 66) (2019) (denying motion for sanctions under Court of Appeals Rule 7 (e) (2), having granted application for discretionary appeal and vacating the order at issue).

[13] See generally *Sunn v. Trophy Marine, Inc.*, 176 Ga. App. 68, 68-69 (1) (334 SE2d 884) (1985) ("The Court of Appeals is a court for the correction of errors of law only, and has no jurisdiction to hear evidence aliunde the record or to decide disputed

Lynch submitted to *this Court* an Appellee's Brief, completely ignoring the second of

two arguments that Wife raised in her Appellant's Brief and Application for

Discretionary Review (wherein Wife pointed out the two fictitious cases in the trial

---

issues of fact.").

9

court's order),[14] and provided 11 bogus case citations[15] out of 15 total,[16] one of which was in support of a frivolous request for attorney fees.

Therefore, we impose a $2,500 frivolous motion penalty on Lynch, which is the most the law allows, pursuant to Court of Appeals Rule 7 (e) (2).[17] We have no

[14] See Court of Appeals Rule 25 (b) ("If an appellee disagrees with the appellant's statement of the case in whole or in part, the appellee must identify any points of disagreements with supporting citations to the record.").

[15] See Appendix, infra, for a list of case citations.

[16] The percentage of bogus citations (73 percent of the 15 citations in the brief or 83 percent if the two bogus citations in the superior court's opinion and the five additional bogus citations in Husband's response to Wife's petition to reopen Case are included) is consistent with the use of a general purpose large-language model. According to a 2024 law review article:

> In attempting to find answers behind the phenomenon of the "hallucinations" to which generative AI seems prone, researchers at Stanford decided to test the technology. They measured more than 200,000 legal questions on OpenAI's ChatGPT 3.5, Google's PaLM 2, and Meta's Llama2 (all general purpose large-language models not built specifically for legal use). The researchers found that these large-language models hallucinate *at least seventy-five percent of the time* when answering questions about a court's core ruling.

John G. Browning, Robot Lawyers Don't Have Disciplinary Hearings Real Lawyers Do: The Ethical Risks and Responses in Using Generative Artificial Intelligence, 40 Ga. St. U. L. Rev. 917, 953 (2024) (emphasis supplied).

[17] See Court of Appeals Rule 7 (e) (2) ("The panel of the Court ruling on a case, with or without motion, may by majority vote to impose a penalty not to exceed

information regarding why Appellee's Brief repeatedly cites to nonexistent cases and can only speculate that the Brief may have been prepared by AI.

2. As to Wife's argument that the trial court erred by denying her petition to reopen case, we are unable to conduct meaningful review of that ruling.

In the Appellee's Brief, Husband argues that the superior court's factual findings are not reviewable because Wife failed to cause a transcript of the court's hearing to be included with the Record on Appeal.

It is true that "where an appeal is taken which draws in question the transcript of the evidence and proceedings, it shall be the duty of the appellant to have the transcript prepared at the appellant's expense."[18] Thus, the general rule is that "in the absence of a transcript or legal substitute for a transcript, "there is no evidence before [the appellate] court and the judgment of the trial court on evidentiary matters cannot be reviewed." However, this rule is based on the presumption that trial courts follow

---

$2,500 against any party and/or a party's counsel in any civil case in which there is a direct appeal, application for discretionary appeal, application for interlocutory appeal, or motion that is determined to be frivolous."); see also Court of Appeals Rule 7 (a) (inherent power of Court).

[18] OCGA § 5-6-41 (c); see also *Holmes v. Roberson-Holmes*, 287 Ga. 358, 360-361 (1) (695 SE2d 586) (2010).

the law, and that presumption can be rebutted.[19] "[T]he absence of a transcript does not authorize such presumption of correctness when the record plainly shows harmful error."[20]

In this case, Wife has rebutted the presumption of regularity by pointing out that both of the cases cited in the order denying her petition to reopen *do not exist*.[21] Because the order denying her motion to set aside the divorce decree has a defect apparent on its face, we cannot conduct any meaningful appellate review of the merits of Wife's argument that the court lacked jurisdiction over her person.[22] Accordingly,

[19] See *Infinite Energy, Inc. v. Cottrell*, 295 Ga. App. 306, 310 (5) (671 SE2d 294) (2008).

[20] *Freeway Junction*, 202 Ga. App at 706 (415 SE2d 312) (1992), overruled in part on other grounds by *Holmes*, 287 Ga. at 361 (1) n. 3 (distinguishing *Freeway Junction*, but overruling it to the extent this quote could be read to reject the presumption of regularity).

[21] See *Shuler v. Akpan*, 362 Ga. App. 810, 817-818 (870 SE2d 235) (2022) (holding that presumption of regularity was overcome by the record, despite the absence of a transcript of the default-judgment hearing, where the trial court found that service by publication was warranted because the sheriff and process server had been unable to perfect service on the "defendants" but the record was devoid of any evidence that plaintiff made diligent efforts to serve defendant prior to the grant of the motion for service of publication).

[22] See OCGA § 9-12-16 ("The judgment of a court having no jurisdiction of the person or the subject matter or which is void for any other cause is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to

we vacate the order and remand for further proceedings consistent with this opinion. The superior court is specifically directed to hold a new hearing on Wife's motion to set aside the divorce decree.

3. In sum, we vacate the superior court's order and remand for further proceedings, including a new hearing on Wife's motion to reopen. We also impose a $2,500 penalty against Lynch. This penalty shall constitute a money judgment in favor of Wife (Nimat Shahid) against Husband's attorney (Diana Lynch), and the trial court is directed to enter judgment in such amount upon return of the remittitur in this case.[23]

*Judgment vacated and case remanded. Barnes, P. J., and Brown, J., concur.*

Appendix.

The following is a list of fictitious cases included in Appellee's Brief:

- *In the Interest of J. M. B.*, 296 Ga. 786 (2015)

---

consider it.").

[23] See Court of Appeals Rule 7 (e) (3); *We Care Transp., Inc. v. Branch Banking & Trust Co.*, 335 Ga. App. 292, 298 (3) (780 SE2d 782) (2015) (applying former Court of Appeals Rule 15 (b)).

- *Miller v. Miller*, 288 Ga. 274 (702 SE2d 888) (2010)[24]

- *Brown v. Brown*, 264 Ga. 48 (1994)

- *Walker v. Georgia*, 309 Ga. 749 (2021)

- *Ramos v. Ramos*, 279 Ga. 487 (2005)

- *McRae v. McRae*, 263 Ga. 303 (1993)

- *Johnson v. Johnson*, 285 Ga. 408 (2009)

Appellee's Brief also contains four citations to real cases that have nothing to do with the proposition stated:

- *Blasingame v. Blasingame*, 249 Ga. 791 (294 SE2d 519) (1982)[25]

---

[24] The Brief provides parallel case citations for three cases, which are three of the four case citations purportedly "Supporting Service by Publication" (given in lieu of the bogus *Epps* and *Hodge* case citations from the superior court's order): (1) The regional reporter citation given for *Miller v. Miller*, 702 SE2d 888, does not correspond with the Georgia Reports citation, 288 Ga. 274, but does correspond with another case involving a party named Miller: *Miller v. State*, 288 Ga. 286 (2010). However, the opinion in that criminal appeal has nothing to do with the proposition stated in the Brief for *Miller v. Miller*: "The court upheld service by publication where the husband's attempts to locate the wife were unsuccessful, and she had vacated the marital residence without providing a forwarding address." (2) *Blasingame v. Blasingame*, 249 Ga. 791 (294 SE2d 519) (1982) is a real case citation from a divorce appeal, but it had nothing to do with service by publication; contrary to what is said in Appellee's Brief, *Blasingame* did not "uph[o]ld service by publication where the defendant deliberately concealed their whereabouts to avoid service."

[25] See note 29, supra.

- *Wilson v. Wilson*, 282 Ga. 728 (2007)[26]

- *Brown v. Tomlinson*, 246 Ga. 513 (1980)[27]

- *Jones v. State*, 277 Ga. 36 (2003)[28]

Husband's Response to Wife's Petition to Reopen Case provides citations to seven cases, none of which appear to exist. In addition to the two hallucinated cases that made it into the trial court's order, the Response cites the following non-existent cases:

- *Fleming v. Floyd*, 237 Ga. 76 (226 SE2d 601) (1976)

---

[26] According to Appellee's Brief, *Wilson* supports deference to the trial court, specifically "The trial court's findings of fact will not be set aside unless they are clearly erroneous, and the appellate court must defer to the trial court's ability to assess witness credibility." However, *Wilson* says nothing about appellate review of a trial court's factual findings. See 282 Ga. 728 (653 SE2d 702) (2007).

[27] According to Appellee's Brief, "[t]his case sets the precedent that in the absence of a transcript, the appellate court will defer to the lower court's findings. The appellate court cannot reverse factual determinations unless there is a manifest error." In *Brown v. Tomlinson*, 246 Ga. 513 (272 SE2d 258) (1980), the Supreme Court says nothing about the absence of a transcript or the appropriate level of deference to a lower court's findings.

[28] In this criminal appeal, the Supreme Court of Georgia had the trial transcript before it and said nothing related to the proposition in the brief: "Without a transcript, the appellate court cannot review what transpired at trial and must affirm the trial court's judgment unless the appellant can demonstrate error by other means." See 277 Ga. 36 (586 SE2d 224) (2003).

15

- *Christie v. Christie*, 277 Ga. 27 (586 SE2d 57) (2003)

- *Mobley v. Murray County*, 178 Ga. App. 320 (342 SE2d 780) (1986)

- *Robinson v. Robinson*, 277 Ga. 75 (586 SE2d 316) (2003)

- *Reynolds v. Reynolds*, 288 Ga. App. 688 (2008)